## Hutchinson, et al. v. Miller, et al.

(Decided March 27, 1914.)

### Appeal from Campbell Circuit Court.

1. **Elections—Submission of Questions to Voters—Time of Submission.**—Where an act provided for the submission to the people of the question whether they wished to have the fiscal court composed of three commissioners "at a general election to be held for county officers," the question could not be submitted at a

general election at which no county officers were to be elected.

2.  Elections—Time of Holding—Void Election.—Where the statute fixes the time at which an election shall be held, if it is held at any other time than that designated, the election will be void, and a void election is no election.

3.  Elections—Election to Fill Vacancy Not a General Election.— An election to fill a vacancy in a county office is not a general election in the meaning of an act providing that the question may be submitted at a general election to be held for  county officers.

4.  Injunction—Proper Remedy  to  Settle Controversy Respecting Who Shall Exercise Functions of an Office.—Where an officer, in the rightful possession of his office, is molested or interfered with in the discharge of his official duties, to the detriment and hurt of the public business, an injunction will lie against the persons wrongfully interfering to restrain them from disturbing the rightful officer in the discharge of any of the powers or functions of his office.

JAMES C. WRIGHT for appellants.

JOHN T. HODGE,  AUBREY BARBOUR for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Sections 1847-1851 inclusive of the Kentucky Statutes make provision for three county commissioners in any county desiring to have commissioners in control of its fiscal affairs, and describe the manner in which the people of any county may express their purpose to have commissioners and how and when they shall be elected, their qualifications and terms of office. Sec. 1847 provides that:

"The county judge of said county (upon application by written petition signed by three hundred and fifty of the legal voters of said county) is hereby authorized, empowered and directed to submit to the qualified voters of the county, at the next general election thereafter to be held for county officers in accordance, in all respects, with the provisions governing general elections prescribed by law, the question, 'whether the fiscal court of the county shall be composed of three commissioners, to be elected from the county at large, and the judge of the county court.' "

It further provides that, "If a majority of the legal votes cast at said election are in favor of the fiscal court of said county being composed of three commissioners to be elected from the county at large and the judge of the county court, it shall be the duty of the county judge, before the next general election for county officers, to di-

vide the county into three districts as nearly equal in population as possible; and at said election there shall be elected in said county by the qualified voters thereof, and every four years thereafter, three commissioners, one from each district, who, with the judge of the county court, shall constitute the fiscal court of the county until otherwise changed by law."

In August, 1912, there was submitted to the county judge of Campbell County a petition conforming to the statutory requirements, and thereupon the judge entered an order submitting to the voters of Campbell County at the regular election to be held in November, 1912, the question whether "the fiscal court of Campbell County shall be composed of three commissioners to be elected from the county at large and the judge of the county court." At this election a majority of the voters of the county expressed themselves in favor of having commissioners, and in 1913, the county judge entered an order in conformity to the statute dividing the county into three districts, and thereafter at the regular election in 1913 the appellees herein were elected commissioners for the county and qualified as such.

In January, 1914, the justices of the county brought this suit to enjoin the appellees claiming to be commissioners, from in any manner interfering with or disturbing them while acting as the fiscal court of the county in the performance of the duties imposed upon them by law as members of the fiscal court, upon the principal ground that the election held in 1912 was not authorized by the statute and void.

The case was submitted to the judge of the Campbell Circuit Court upon the pleadings, there being no issue of fact, and after considering the case, he dismissed the petition, and the justices appeal.

Several grounds are urged in behalf of the justices why the judgment should be reversed and the relief they prayed for granted; but we only deem it necessary to consider the principal ground, which is, was the election held in 1912 void? If this election was void, of course the county judge had no authority to divide the county into districts or to direct that a poll be opened for the election of commissioners in 1913, as a void election at which the people of the county attempted to express their desire to have commissioners would be no election and no expression of the will of the people upon this subject.

Neither the Constitution nor the statute made any provision for holding a general election for county officers at the regular election in 1912, and no general election for county officers was held in 1912; although it appears that at this election a circuit court clerk for Campbell County was elected to fill a vacancy in that office. Sec. 144 of the Constitution provides that: "Counties shall have a fiscal court, which may consist of the judge of the county court and the Justices of the Peace, in which court the judge of the county court shall preside if present; or a county may have three commissioners, to be elected from the county at large, who, together with the judge of the county court, shall constitute the fiscal court."

Pursuant to this constitutional direction the Legislature enacted the statute to which reference has been made. Sec. 148 of the Constitution provides in part that, "All elections of State, county, city, town or district officers shall be held on the first Tuesday after the first Monday in November; but no officer of any city, town, or county, or of any subdivision thereof, except members of municipal legislative boards, shall be elected in the same year in which members of the House of Representatives of the United States are elected. District or State officers, including members of the General Assembly, may be elected in the same year in which members of the House of Representatives are elected."

It is further provided in section 1519 of the Kentucky Statutes that: "An election shall be held in each county on the first Tuesday after the first Monday in November, 1894, for judge of the county court, county court clerk, county attorney, sheriff, county superintendent of common schools, members of the fiscal court, jailer, coroner, surveyor and assessor, and in each justice's district for one justice of the peace and one constable, who shall hold their respective offices for the period of three years, and until the election and qualification of their successors; and in 1897, and every four years thereafter, there shall be held an election in each county for the officers herein mentioned."

The purpose of these sections of the constitution and statute was to provide for the election of these county officers at a time when members of Congress are not elected. As members of Congress are elected in even years, the Legislature provided that these county officers

should be elected in odd years.  The officers mentioned in section 1519 compose all of the officers known and described as county officers except the circuit court clerk. This officer is elected for six years, and it is provided in section 1518 that a circuit court clerk should be elected "on the first Tuesday after the first Monday in November in the year 1897, and on the same day every six years thereafter," thus making the election of the circuit court clerk fall in an odd year.

It is also provided in section 1437 that, "Whenever in this chapter the word 'election,' or an equivalent expression, is used in reference to a State, district, county or municipal election, it shall be deemed to include the decision of questions submitted to the qualified voters as well as the choice of officers by them."

These various constitutional and legislative provisions indicate a clearly expressed purpose to have a general election for county officers in even years, or in years in which members of Congress are not elected, and this legislative purpose was further extended in the act we are now considering to embrace the election in question here for it is therein declared that the question whether the fiscal court of the county shall be composed of three commissioners should be submitted to the people of the county "at the next general election thereafter to be held for county officers."

It is also manifest, we think, from this direction that the Legislature desired to give to  the  people of the county an opportunity to express themselves upon this important question at a time when they were electing officers for the county and when their attention would naturally be directed to county affairs.  Unquestionably the Legislature had the authority to designate, as they did do, the general elections at which this question should be submitted, and in the exercise of this power they designated a time at which a general election for county officers was being held.

We also think it very clear that an election to fill a vacancy in the office of circuit court clerk was not a general election within the meaning of the legislative act, and so the question really presented is, did the county judge have power to submit this question to the people of the county at a general election at which no officers for the county were to be elected? We think he did not, and if he did not, it necessarily follows that the election

was void, because where the legislative act under which an election is held specifies' the time when the election shall be held, it must be held at that time or else it is no election. McCreary on Elections, Sec. 176; 15 Cyc., pages 317, 341. If we should rule that this question could be submitted at any general election, although it might be an election for members of Congress or presidential electors or district or state officers, or at a general election at which county officers were not to be elected, manifestly such a ruling would do violence to the plain letter of the statute. It would be giving to a very simple and yet important provision a construction that viewed from the letter or spirit of the statute, it is not susceptible of. We are not at liberty to thus set aside the legislative will and direction or to so construe an unambiguous clause as to give it a meaning that was clearly not intended.

Counsel for appellees press on our attention the delay that the construction we have adopted would subject the people of the county to in an effort to adopt the commission form of government, but this condition we have no power to relieve; and also direct attention to the fact that under the first election contemplated by this act the question might be submitted at a time when general officers for the county were not to be elected. The Constitution went into effect in September, 1891, and this act became a law in October, 1892, and it was necessary in the beginning of the operation of this and other acts providing for the submission of questions and the election of officers to fix some terms as well as elections for and at times not in harmony with the general scheme of the Constitution until these matters could be so adjusted as to conform to the general plan. But these digressions from the general scheme were merely temporary expedients made necessary by the existence of conditions that could not be dealt with in any other way, and within a few years after the adoption of the Constitution all legislative acts in relation to elections conformed to its provisions.

It is also contended that an injunction was not the proper remedy. We think it was. The appellants, as plaintiffs below, sought to restrain the appellees from usurping some of the functions of their offices. The appellees were not claiming to exercise the offices of Justices of the Peace. They only sought to exercise some of the functions belonging to this office, and to prevent this

interference the Justices of the Peace had the right to seek redress by injunction.

This precise question was determined adversely to the contention of counsel for appellees in Hollar v. Cornett, 144 Ky., 420, where the court said: "Incidentally, though not less earnestly, counsel for defendants insisted in the argument that injunction was not the proper remedy. We think, however, that when an officer, in the rightful possession of his office, is molested or interfered with in the discharge of his official duties, and to the detriment and hurt of the public business, this form of action is proper. * * * An injunction will lie, however, to restrain the exercise of the duties of an office, or to prevent interference therewith, whenever the interests of the public require it."

In the case we have the Justices of the Peace were invested, by section 1840 of the Kentucky Statutes, with full authority to regulate and control the fiscal affairs of the county and any interference with this power by appellees under a claim of right by which they proposed to take the regulation and control of the fiscal affairs of the county out of the hands of the Justices of the Peace who were rightfully in possession thereof, was detrimental to the public business and the public good.

Wherefore, the judgment is reversed, with directions to enter a judgment permanently enjoining the appellees, and each of them, from assuming to discharge any of the rights, powers or functions of the fiscal court of Campbell County or interfering with or disturbing in any way the Justices of the Peace of the county in the discharge of the duties conferred upon them by law as the fiscal court of the county.