## Milliken et al. v. Harrod, Constable, et al.

(Decided Nov. 25, 1938.)

LAURENCE B. FINN and WM. H. NATCHER, HUBERT MERE-DITH, Attorney General, and GUY H. HERDMAN, Assistant Attorney General, for appellants.

M. B. HARLIN, JR., for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Appellee, William Harrod, suing individually as a taxpayer and resident of Warren County, Kentucky, and as constable for magisterial district No. 2, instituted this suit in the Warren circuit court against the appellants, G. D. Milliken, Jr., Judge of the Warren County Court, and the eight magistrates of Warran County, namely, L. E. White, J. C. Davenport, Will Anderson, Emmett Smith, J. W. Van Meter, Neil Comfort, Eugene Murray and Tom Wilson, together with the county judge composing the fiscal court of Warren county, Raymond G. Stahl, County Treasurer for Warren County, and Webb A. Howard, Samuel P. Martin, Fred G. Vail, and Edwin Topmiller, county patrolmen for Warren county, seeking to enjoin the said county judge and magistrates from paying out of the public funds of Warren county the salaries of said county patrolmen, and further to enjoin the said county patrolmen from acting as deputy constables in magisterial district No. 2 of Warren county. We will refer to appellee as plaintiff and to appellants as defendants according to their status in the lower court.

The plaintiff alleged in his petition, in substance, that he was elected constable for magisterial district No. 2 in Warren county at the November 1937 election and qualified on the first Monday in January, 1938, and entered upon the duties of the office; that on January 3, 1938, the defendant county judge called a special term of the Warren county court and pursuant to the call the defendants, magistrates and county judge, convened together and undertook to divide Warren county into four patrol districts; that district No. 1 embraces magisterial district No. 2, in which the plaintiff was elected constable as aforesaid, and that at the same meeting the defendant members of the fiscal court further undertook to appoint the defendants Howard, Vail, Martin and Topmiller as county patrolmen for the various respective patrol districts, for a period of one year, and further undertook to provide that the patrolmen be paid a salary for their services payable out of the county treasury. It is further alleged that at a later meeting the defendants county judge and magistrates, composing the fiscal court, undertook to appoint patrolmen Howard, Martin, Vail and Topmiller deputy constables for magisterial district No. 2 and that they are acting or attempting to act as deputy constables in plaintiff's magisterial district and that their purported appointments

were made solely by the defendant county judge and that plaintiff did not designate or appoint any of said defendants as constables and that their appointments purported to have been made by the county judge alone was without plaintiff's co-operation and consent, and that said patrolmen have been undertaking and attempting to function and act both as county patrolmen and deputy constables and have been and are exercising the powers and duties of deputy constables as well as county patrolmen and undertaking to receive and collect compensation and remuneration therefor provided for by the orders of the fiscal court. It is further alleged that the defendant members of the fiscal court have no right or authority of law to appoint county patrolmen and that the county judge had no right to appoint deputy constables in and for magisterial district No. 2 and all orders or purported orders attempting to create and establish patrol districts in Warren county and purporting to appoint patrolmen and deputy constables in the manner aforesaid and the attempted appropriation of the public funds of the county to pay the patrolmen are void and of no effect. He prayed for an order of injunction in accordance with the allegations of the petition.

The court entered an order granting a temporary injunction according to the prayer of the petition and appellants entered motion before a member of this court to dissolve the temporary injunction, which motion was overruled, and upon a return of the case to the Warren circuit court the case was further prepared and tried on the merits and the court entered a final judgment making the temporary injunction permanent and granted the plaintiff the relief prayed. To reverse that judgment the defendants have prosecuted this appeal.

A number of questions are raised in brief of defendants pertaining to the court's ruling on demurrers, special demurrers, motion to strike and to paragraph. But since questions of law only are involved, and the court as indicated in the written opinion made part of the record, considered all issues and questions of law raised and determined the case upon its merits, we do not think the questions of practice are of any importance as affecting the merits of the case.

It is insisted for defendants that the allegations of plaintiff's petition to the effect that the defendants pa-

trolmen were illegally appointed and unlawfully holding the office of patrolmen and deputy constables, in effect charge the defendants with being usurpers of such offices, and, therefore, plaintiff has no right to maintain this action, that function being vested in the Attorney General and Commonwealth's Attorney, and rely on sections 480-485, of the Civil Code of Practice which provides that an ordinary action may be brought by a person entitled to the office against usurpers and if no person is entitled to the office, then an ordinary action may be brought by the Attorney General or Commonwealth's Attorney. We are unable to agree with defendants as to the nature and purpose of the action. In the chancellor's opinion he clearly points out the distinction between such actions provided for by the Code, supra, and an action by a taxpayer, not to contest the right of a person to hold an office, but to enjoin the payment of salaries not authorized by law, and the right of an officer to enjoin another person from unlawful interference with his possession of his office.

After stating the purpose and nature of the litigation, as we have indicated, the chancellor wrote:

"Defendants file a special demurrer challenging plaintiff's authority to maintain this action and the case is now before the court on this special demurrer. The court is not concerned with the exigencies of the appointment of Howard, Vale, and Topmiller as deputy constables by the county judge, or with the exigencies with their appointment as county patrolmen. At this stage of the proceeding the sole questions to be determined are: First, can the plaintiff as constable maintain this suit to prevent the three named deputy constables from performing the duties of the office to which he was legally elected, qualified and is now acting? Second, can the plaintiff as a citizen and taxpayer maintain this action to challenge the authority of the fiscal court to expend public funds to pay these three patrolmen?

"Sections 480-485 of the Civil Code provide an ordinary action may be brought by the person entitled to the office against usurpers; and if no person is entitled to the office, then an ordinary action may be brought by the Attorney General or Commonwealth Attorney. It is well settled in Kentucky

a taxpayer, or any person not entitled to the office usurped, cannot maintain an action against a usurper; in such instances the action must be brought by the Attorney General or the Commonwealth Attorney. King v. Kahne, 87 S. W. 807, 27 Ky. Law Rep. 1080; Anderson v. Fowler, 180 Ky. 587, 203 S. W. 322. But it is equally well settled in this state a person entitled to an office may maintain an action against the person usurping the office. Morgan v. Adams, 250 Ky. 441, 63 S. W. (2d) 479; Poyntz v. Shackelford, 107 Ky. 546, 54 S. W. 855, 21 Ky. Law Rep. 1323. Counsel for defendants argue there is a decided difference between a constable and a deputy constable, and that while a deputy constable could maintain this suit against another deputy constable, the constable himself cannot maintain it against a deputy constable. Our mind cannot grasp the distinction. It is an elementary principle of law an agent has no greater authority than his principal; then certainly the principal, or here the chief officer, will not be denied any right or privilege his agent or deputy has. It is further argued these three deputy constables were appointed by the county court and hold office for the term to which they were appointed and they can only be removed as provided by Sec. 3766a-6, Kentucky Statutes. Sec. 425, Kentucky Statutes, authorizes a constable to appoint one or more deputies by and with the consent of the county judge. Certainly this section does not give the county judge the right to appoint deputy constables; it merely gives the county judge a veto on any appointments made by the constable. We know of no statute authorizing the county judge to appoint deputy constables and the industrious and learned counsel for defendants have cited none to us. Section 3766a-6 relates to the removal from office of any sheriff, jailer, constable, or other peace officer, by the governor for misfeasance or malfeasance in office; but this section does not prevent any of these officers from removing any deputy upon purely personal grounds, or for reasons sufficient to the officer under whom the deputy may serve. Section 3766a-6 has no application to the case at bar.

''Defendants next raise the point a court of equity has no jurisdiction in this case and an in-

junction will not lie against an officer, and this action should have been brought at law. Hollar v. Cornett, 144 Ky. 420, 138 S. W. 298, decided this point, when Judge Lassing wrote [page 299]:

" 'But the actual incumbent of an office, whether de jure or de facto if duly qualified and in office by virtue of a certificate of election issued by the proper officers, will be protected by injunction against unlawful interference with his possession thereof.'

"Hill v. Anderson, 122 Ky. 87, 90 S. W. 1071, 28 Ky. Law Rep. 1032, holds equity will not interfere by injunction to determine questions concerning the appointment or election of public officers, or title to the office, such questions being cognizable at law. But this suit was not brought to determine who is entitled to the office, it being admitted Harrod is the duly elected, qualified and acting constable; the question to be determined is whether the three gentlemen claiming to have been appointed as his deputies by the county judge may be enjoined from performing the duties and enjoying the emoluments of Harrod's office. In Hutchinson v. Miller, 158 Ky. 363, 164 S. W. 961, Judge Carroll, speaking for the court, wrote [page 963]:

" 'It is also contended that an injunction was not the proper remedy. We think it was. The appellants, as plaintiffs below, sought to restrain the appellees from usurping some of the functions of their offices. The appellees were not claiming to exercise the offices of justices of the peace. They only sought to exercise some of the functions belonging to this office, and to prevent this interference the justices of the peace had the right to seek redress by injunction.'

"From Poyntz v. Shackelford, supra, 54 S. W. 858 we quote:

" 'Equity cannot try the title to office in a direct proceeding; but, when the question arises collaterally, it will assume jurisdiction over it, and decide it. Accordingly, though it will not interfere to put a claimant in possession of his office, it will protect one already in possession from being disturbed unlawfully.'

"Therefore, we hold Harrod, as the duly elected, qualified and acting constable, has authority to maintain this action wherein he is seeking to enjoin Howard, Vale, and Topmiller from acting as, and performing the duties of, deputy constables in magisterial district number two.

"The second question to decide is has Harrod authority as a taxpayer to maintain this action to enjoin the fiscal court and county treasurer from paying Howard, Vale and Topmiller as county patrolmen the salaries the fiscal court ordered to be paid them? We have already seen a taxpayer cannot maintain a suit to oust an officer or to contest his right to the office; nor can a taxpayer indirectly contest the officer's title to his office by enjoining the payment of his official salary. Spurlock v. Lafferty, 214 Ky. 333, 283 S. W. 124. These three county patrolmen were appointed by virtue of chapter 95 (Secs. 3780-3786), Carroll's Kentucky Statutes 1936 Ed. as the order appointing them shows. This chapter provides salaries of the patrolmen should be fixed by the fiscal court, and it may be paid out of the county levy or it may be paid by the person petitioning for their appointment. But chapter 95 was expressly repealed by the legislature in a special session held the last days of 1936 and the first part of 1937. We quote Sec. 5 of Chapter 13 of said special session (Kentucky Statutes Supp, 1938, sec. 3786-6):

" 'All parts of Sections 3780, 3781, 3782, 3783, 3784, 3785, and 3786, Kentucky Statutes, Carroll's 1930 and 1936 Editions, except those parts in each of said sections relating to patrols in counties in this Commonwealth having cities of the first and second class are hereby repealed.'

"The court takes cognizance Warren County has no city in it of the first or second class. Said chapter 13 names the sheriff and his deputies in each county as Highway Patrolmen, prescribes their duties and section four thereof fixes the salary of $1500.00 per annum, 'to be determined by the Auditor of Public Accounts of the Commonwealth and paid by the treasurer thereof out of the General Fund.'

"It thus appears the statute prescribes the only

compensation the county highway patrol may receive and it must be paid out of the general fund by the state treasurer. We do not know of any authority by the fiscal court to pay county patrolmen, and as said by the Court of Appeals in the last paragraph of Spurlock v. Lafferty, supra, a taxpayer may maintain a suit to enjoin the payment of salaries not authorized by law.

"We therefore, hold Harrod as a taxpayer may maintain this action not to contest the right of the three county patrolmen appointed by the county court to hold their office, but to enjoin the fiscal court and county treasurer from paying salaries not authorized by law."

It is not seriously contended that the defendants were legally appointed deputy constables by the county judge. The only question stressed in brief of defendants relates to the validity of their appointment and right to act as county patrolmen.

The chancellor treated the action as being for the purpose of enjoining defendants from acting as deputy constables and to enjoin the fiscal court and county treasurer from paying the defendants' salaries as county patrolmen upon the grounds and for reasons set out in the opinion above quoted. Defendants insist that the chancellor was in error in his construction of the petition and that it should have been treated as an action to oust defendants as usurpers, citing Spurlock v. Lafferty, 214 Ky. 333, 283 S. W. 124.

In the Spurlock Case, supra, it is pointed out that Spurlock was not a usurper but a de facto officer, he having been appointed to the office of City Marshal created by Section 3616, Kentucky Statutes, and the appointment of City Marshal by the city being authorized by Sec. 3618, of Kentucky Statutes.

In that action the plaintiff sought to have it adjudged that Spurlock was ineligible to hold the office of city marshal of Prestonsburg (a city of the fifth class) and further that he and the deputy appointed by him (Sizemore) be adjudged to be usurpers in their respective offices, and that they be enjoined and restrained from acting as such officers and that the members of the city council of Prestonsburg and the city treasurer be enjoined from paying Spurlock and his deputy the sala-

ries attached to their offices. The office of city marshal of cities of the fifth class is created by statute, supra, and the appointment of the city marshal by the council being authorized by the statute, it is thus seen that Spurlock was at least a de facto officer and the right to hold the office and to be paid his salary being attacked upon the ground of his ineligibility for the office, it was held that a citizen and taxpayer could not maintain such action. It further appears that Spurlock as city marshal with the approval of the city council appointed Sizemore deputy marshal and the city council fixed the salary of the deputy marshal at $50 per month, whereas section 3629 of the Kentucky Statutes, among other things, authorizing the appointment of a deputy marshal, provides that the deputy's compensation shall be for his services of process but authorizes no salary. The salary being unauthorized by statute, it was held that the ordinance fixing the salary at $50 per month was invalid and the judgment of the lower court enjoining the payment of the deputy's salary was affirmed.

In the case at bar the statute, Sections 3780 to 3786, inclusive, previously authorizing the appointment of county patrolmen, by the fiscal court, having been repealed and there existing no authority of law for the appointment of county patrolmen by the fiscal court, it follows that the fiscal court was without authority of law to pay the salaries of such patrolmen attempted to be appointed. These facts bring the case within the purview of the Spurlock Case, supra, in respect to the payment of the deputy marshal's salary which was unauthorized by law. The chancellor's opinion and the authorities therein cited clearly distinguish the case at bar from the Spurlock Case or other like cases, involving the question of an officer either de facto or de jure. The chancellor's opinion and judgment is based upon the theory that the defendants' purported appointment both as deputy constables and county patrolmen were without authority of law and void, and therefore the plaintiff had the right in his official capacity as constable to enjoin the defendants from acting or purporting to act as deputy constables, and, further, that as a taxpayer of Warren county, plaintiff had the right to enjoin the payment of the salaries of defendants as county patrolmen. The authorities cited by the chancellor amply support his conclusions.

Defendants concede that section 5 of chapter 13 of

the Acts of the 4th Extra Session of 1936-37, now Sections 3786-1 to 3786-7 of Baldwin's 1938 Supp. to the Kentucky Statutes, purports to repeal Section 3780 to 3786, inclusive, of the Kentucky Statutes and concede that if the 1937 Act is constitutional, Sections 3780-3786 of the Statutes under which defendants were appointed county patrolmen are repealed and there exists no authority of law for the appointment of county patrolmen by the fiscal court. It is insisted, however, that chapter 13 of the 1936-37 Act is unconstitutional and therefore the previous statutes, Sections 3780 to 3786, under which defendants were appointed county patrolmen is left in effect and that the appointments are valid.

It is to be noticed that the chancellor in his opinion did not discuss the validity of the 1937 Act in question, but assumed its validity by holding that it repealed Sections 3780 to 3786 of the Kentucky Statutes, 1936 Edition.

Section 1 of chapter 13 of the Acts 1936-37, 4th Ex. Sess., reads:

"§ 1. There is hereby created and established a County Highway Patrol and Investigator for each county for the Commonwealth of Kentucky, and the duties thereof shall be performed by the qualified and acting sheriff and his duly appointed and qualified deputy sheriffs in each county."

Section 2 of the Act provides that the sheriff and his deputies shall patrol each public road and highway in his county and makes it their duties to investigate all accidents, collision and wrecks occurring upon said roads and highways and prescribes the manner of investigation, and further provides that:

"* * * When any person is wounded or killed, or there is reason to believe that criminal negligence or carelessness was the cause of the accident, collision or wreck, said officer making the inspection, shall take affidavits or statements from all witnesses who have information of incriminating facts connected therewith, and for the purpose of securing said affidavits or statements, each sheriff and his authorized deputy is authorized and empowered, forthwith and upon his own initiative, to issue and serve a subpoena upon said witnesses requiring them to testify, and is hereby authorized

and empowered to administer an oath to each of said witnesses before testifying, and to reduce to writing said testimony, and he shall return said affidavits and statements, together with a report in writing of all information required, to the county attorney of his county and a duplicate of said report and statements or affidavits to the circuit court clerk of his county for submission to the foreman of the grand jury next to be convened in said county.''

Sections 4 and 4a of the Act read as follows:

Section 4:

"§ 4. Each county sheriff for the additional services herein required shall receive reasonable compensation therefor, and not more than One Thousand Five Hundred Dollars ($1,500.00), per annum, to be determined by the Auditor of Public Accounts of the Commonwealth and paid by the treasurer thereof out of the General Fund, provided the compensation of said officer as sheriff, together with his other compensation as sheriff, as now provided by law, shall not in any year exceed a total of Five Thousand Dollars ($5,000.00), together with the reasonable compensation of his deputy sheriffs and the expenses of his office as sheriff as now allowed by law, said additional compensation to commerce from the effective date of this Act.''

Section Four-a (4-a):

"The Auditor in determining the amount to be paid shall pay to such sheriffs that sum of money which will not cause the sheriff to draw in excess of the largest sum heretofore received by the sheriff during the tenure of his office or of his predecessor and in no event in excess of the Constitutional limit.''

Section 5 of the Act repeals Sections 3780 to 3786, inclusive, of Carroll's 1930 and 1936 Editions of the Statutes, except those parts in each of those sections relating to patrols in counties in this Commonwealth having cities of the First and Second Classes. Warren county contains no city of the First or Second Class. The constitutionality of the Act is attacked upon various grounds.

(1) The argument is that that part of Section 4 of

the Act quoted above which provides that the compensation of the sheriff, together with his other compensation as sheriff, as now provided by law, shall not in any year exceed a total of $5,000 discloses a legislative intent to require the outgoing sheriff to qualify at the end of his term as delinquent or special tax collector and to collect the tax bills in his hands at the end of his term before he can claim any part of the $1,500 provided in Section 4 of the Act, and that Act should be read in connection with the provision of Section 4135 of the Kentucky Statutes, as amended by the Acts of 1928 and 1932 (Kentucky Statutes 1936), which has been regarded as an extension of the four-year term of the sheriff's office only for the purpose of collecting the uncollected tax bills in his hands at the end of his term; and that it was the legislative intent that if the sheriff failed to collect this tax by refusing to qualify at the end of his term as special tax collector, he should not be permitted to participate in the compensation provided in Section 4 of chapter 13 of the 1936-37 Acts, 4th Ex. Sess., and that Section 4 was inserted for no other purposes.

The title to Chapter 13 of the 1936-37 Acts, 4th Ex. Sess., under consideration makes no reference to Section 4135, supra. It relates to the office of sheriff, providing additional duties, powers and compensation therefor, and repeals certain sections of the statutes mentioned above relating to patrols. Section 1 of the Act creates a County Highway Patrol and Investigator and requires the duties thereof to be performed by the sheriff and his deputies; sections 2 and 3 set out in detail the manner and method of the discharge of those duties; section 4 provides for the compensation to be paid the sheriff "for the additional services herein required." It is obvious that the compensation provided in Section 4 of the Act is intended to compensate the sheriff for the extra duties imposed upon him for his services as Highway Patrolman. We see no connection between the Act under consideration and Section 4135 of the Statutes, relating to the collection of uncollected tax bills in the hands of the sheriff at the end of his term of office.

The objection urged to Section 4a is that it is impossible for the auditor to correctly determine the amount to be paid the sheriff in the manner provided therein. It is insisted that the auditor will be required to visit the county seats of all the counties in Kentucky and make an audit of the annual receipts of the sheriff's

office in each county for eight years, and such audits could not be accurately made without an examination of the files of civil and criminal actions in the offices of the circuit court clerks, county clerks and county judges in each county as well as the sheriff's records and files. If it be conceded that such audits are cumbersome and require much work and expense, yet it cannot be said that that provision of the Act is impossible of administration. Section 4137 of the Kentucky Statutes makes it the duty of the sheriff of each county to keep an accurate account of all monies received by him, showing the amount thereof, the time when, and from whom received and on what account; also, of all the disbursements made by him, etc. It is argued that the sheriffs do not keep accounts of fees and perhaps many other items which may go to make up their salaries or compensation received as sheriff and for that reason the auditor cannot accurately ascertain all monies received by the sheriff. Conceding that to be true, the courts cannot indulge the presumption that the sheriffs do not perform their duties required by the statutes in keeping books and accounts of all monies received, disbursed, etc., by them; but the presumption is that they perform their duties in that respect and the auditor or other person interested may readily ascertain all monies received by the sheriff. The auditor has heretofore been required to and has made audits of the records relating to the compensation of sheriffs for the purpose of determining the salaries of the various sheriffs of the state. We do not see wherein the Act under consideration requires any substantially additional audit than has heretofore been required. The courts are not concerned with the question of whether or not an act of the legislature is a good law or a bad one. The mere fact that an act of the legislature may be ill-advised or somewhat difficult of administration does not necessarily render it unconstitutional. Nor do we see any difficulty in the auditor ascertaining the additional compensation to which the sheriff may be entitled for his services or duties as county patrolman. Sections 4 and 4a of the Act under consideration must be read and construed together. These sections simply mean that the sheriff shall receive reasonable compensation for such additional duties, not exceeding $1500 per annum, provided such additional compensation together with his other compensation as sheriff as theretofore provided by law shall not exceed the largest sum

the sheriff has theretofore received during the tenure of his office or that of his predecessor and in no event in excess of $5,000, the constitutional limit. It is our view therefore that the objections urged to sections 4 and 4a of the Act under consideration do not render it invalid.

(2) The next objection urged to the constitutionality of the Act is that Section 2 thereof delegates to the sheriff judicial functions contrary to Sections 27 and 28 of the Constitution. The alleged judicial power conferred is that it authorizes the sheriff and his deputies in making investigations of violations of the Act to issue and serve summons upon witnesses requiring them to testify and further authorizes and empowers the sheriff to administer an oath to the witnesses and return affidavits and statements to the county attorney of his county; and a duplicate thereof to the circuit court clerk of his county for submission to the grand jury.

We see no possible objections to the legislature empowering a sheriff or deputy sheriff to administer an oath. Such powers are conferred upon many officers and deputies whose duties are clerical, administrative or ministerial only, such as clerks, deputy clerks, notaries public, assessors and many others which might be mentioned. We may here note that section 646 of the Civil Code of Practice authorizes sheriffs to administer oath to appraisers. However, that part of the Act authorizing the sheriff or his deputies to issue subpoenas for witnesses might more nearly approach a judicial function. Conceding, without deciding, that a subpoena so issued by a sheriff or his deputy might not be valid, yet it cannot be said that this one isolated and relatively unimportant feature of the Act would render the whole Act unconstitutional. It is the established rule that even though a part of an Act is unconstitutional, it will not necessarily render the whole Act invalid, unless it is reasonably clear that but for the invalid portion of the Act, the legislature would not have passed it. It could not be said with any plausibility or reason that but for that provision of the Act authorizing the sheriff to issue a subpoena for witnesses the legislature would not have passed the Act.

(3) It is next insisted that the Act is unconstitutional because the Constitution (Section 181 and 181a) bars the state from levying a tax for a county or assuming its indebtedness and, perhaps violates other sec-

tions of the Constitution, to which we will later refer. If the sheriff, in the performance of his duties as a county patrolman, were performing strictly a county function relating only to the county as a governmental unit, appellants' position might be well taken. It appears to us that the purpose of the Act is for the public welfare and protection of the traveling public generally and for the benefit of the state as well as the county, and in this respect the Act is not without precedent. Section 1722 of the Kentucky Statutes provides that the clerks of the various circuit courts of this Commonwealth, with certain exceptions, shall be paid by the Commonwealth a fee of $5 for services rendered or performed by them for the Commonwealth in all felony cases or prosecutions by indictment for felony in their respective courts, the amount to be paid by warrant of the Auditor of Public Accounts upon the State Treasurer, etc. The clerks of the circuit courts are elected by the county and are generally considered county officers, yet they perform certain duties in behalf of the commonwealth. Section 354 provides that sheriffs, constables, coroners, marshals and policemen all of whom are regarded as county, district or city officers, may be paid by the Commonwealth for certain services rendered therein enumerated. To the same effect see, Section 355 of the Statutes further relating to circuit court clerks, and Section 356 relating to jailers. The section last mentioned above provides that the jailer shall be paid certain fees by the state for certain services mentioned in that section. We think that the sheriff when acting as county patrolman comes within the same category as other county, district and municipal officers mentioned above, in that, he is performing a service for the state as well as the county.

In the case of Arnett, Comptroller, v. State of Indiana ex rel. Donohue, 168 Ind. 180, 80 N. E. 153, 8 L. R. A., N. S., 1192, will be found an interesting discussion of the subject involved in the present case. It appears that the Constitution of the State of Indiana has the same or substantially the same provisions relating to the separation of state and local government as the Kentucky Constitution. As we construe that opinion it holds that where there is involved the maintenance of peace and quiet and the supervision of crime and immorality, which are matters of general interest, and to the attainment of those ends local governmental units are largely

subject to the control of the state and that matters of general interest are not necessarily required to be submitted to the judgment and discretion of the people of the locality.

It cannot be denied that the evils intended to be suppressed in the Act under consideration are within the police power of the state and where the legislature has power over a subject it is the sole judge of the means that are necessary and proper to accomplish the object it seeks to attain.

Other sections of the Constitution, 106, 161, 165 and 235 are discussed in brief for appellants, but we find no conflict between the Act under consideration and those sections.

For reasons stated, it follows that the chancellor's judgment on all issues involved is correct.

Judgment affirmed. Whole Court sitting.