RENDERED: MARCH 6, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1299-WC

SAFE ZONE                                                                          APPELLANT

v.                    PETITION FOR REVIEW OF A DECISION
                      OF THE WORKERS' COMPENSATION BOARD
                              ACTION NO. WC-23-91642

DONNELL PERRY; HONORABLE
STEPHANIE L. KINNEY,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD OF KENTUCKY                                                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, A. JONES, AND EASTON, JUDGES.

ACREE, JUDGE: Appellant Safe Zone[1] appeals the Workers' Compensation

Board's opinion finding Appellee Donnell Perry's claim compensable. We affirm.

---

[1] Safe Zone appears to be a Kentucky limited liability company; however, this Court has maintained the designation of this party as shown on all filings with the Kentucky Workers' Compensation Board.

# BACKGROUND

Perry began working for Safe Zone in 2021. His duties included flagging traffic, placing traffic cones and flag stands, and posting signs. He received assignments telephonically and was driven to worksites by supervisors.

On March 8, 2023, Perry reported to work at 7:00 a.m. and was assigned three different work locations. He worked his first assignment for approximately eight hours, his second for approximately two hours, and was finally asked to work a third location, a side street near Dixie Highway in Jefferson County. This final assignment consisted of putting up signs to close a road for Louisville Gas and Electric Company, whose crew was repairing downed trees and power lines. Perry believed this assignment required him to work all night.

At around 9:00 p.m., Perry had been at the Dixie Highway site for two to three hours when he requested permission to go to the convenience store located across Dixie Highway to purchase cigarettes and a phone charger because his phone was nearly out of power. Permission was granted and he crossed the road.

The convenience store was a four-minute walk from the worksite. Perry testified that he was uncertain whether a crosswalk existed but acknowledged a median. He stated this area was the only place to cross and there were no lines painted on the streets nor were there many streetlights.

As Perry returned to his worksite, he looked for approaching vehicles from both directions but saw none. Nevertheless, a vehicle struck him. The vehicle's driver admitted speeding and was so cited by a police officer. Perry was taken to the University of Louisville Hospital by ambulance.

A blood sample taken from Perry at the emergency room tested positive for ethanol at a level of 47 mg/dL. Dr. Daniel Wolens supplied a records review report on behalf of Safe Zone that estimated Perry's blood alcohol to be between 56.7 to 68.3 mg/dL at the time of the accident. Although there is no proof Perry had alcohol in his stomach at the time of the accident, Dr. Wolens opined that Perry likely fell within the higher end of the range because he consumes alcohol chronically, having admitted to drinking six beers per day. Dr. Wolens further explained a slight degree of physiological impairment occurs at levels between 10 mg/dL to 50 mg/dL.

Perry sustained various injuries from the accident, including a right lung pneumothorax, a comminuted and segmental fracture of the left tibia, knee and ankle symptoms, and lower back pain. He underwent surgery to remove a portion of his small intestine, had two screws placed in his left ankle, and a rod inserted in his left leg. He has been unable to work since the accident because he cannot engage in the standing, walking, moving, and physical activities required of

working at Safe Zone or as a cook, a position in which he has prior experience. No physicians have released Perry to return to work.

Perry initiated a workers' compensation action on August 1, 2023. The Administrative Law Judge (ALJ) determined the claim was compensable and the Workers' Compensation Board affirmed the ALJ's findings.[2] Safe Zone now appeals, arguing the claim is not compensable because of the ethanol detected in Perry's blood and because of the manner in which Perry crossed Dixie Highway.

## STANDARD OF REVIEW

This Court will reverse a decision of the Workers' Compensation Board "only where the . . . Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Fresenius Med. Care Holding, Inc. v. Mitchell*, 507 S.W.3d 15, 18 (Ky. App. 2016) (internal quotation marks and citation omitted). We review applications of law *de novo*. *Finley v. DBM Techs.*, 217 S.W.3d 261, 264 (Ky. App. 2007).

---

[2] Although the Board affirmed the ALJ's findings, it remanded for the ALJ to include her calculations utilized for the award of permanent partial disability benefits. All other aspects of the ALJ's Order were left undisturbed.

## ANALYSIS

### I.  Safe Zone is not entitled to the special defense afforded by KRS 342.610(4) because the statute is not inclusive of alcohol intoxication.

Safe Zone argues KRS[3] 342.610(4)—limiting an employer's liability if an employee voluntarily consumes an illegal intoxicant—ought to be interpreted as precluding Perry's recovery based on the ethanol detected in his blood.  Our review begins with the statute's legislative history.

Until July 13, 2018, KRS 342.610(3) relieved an employer from liability when the worker's injury was proximately caused by voluntary intoxication, providing specifically that "[l]iability for compensation shall not apply where injury, occupational disease, or death to the employee was proximately caused primarily by voluntary intoxication as defined in KRS 501.010, or by his or her willful intention to injure or kill himself, herself, or another."  KRS 342.610(3).  Voluntary intoxication is defined in KRS 501.010(4) as "intoxication caused by substances which the defendant knowingly introduces into his body, the tendency of which to cause intoxication he knows or ought to know, unless he introduces them pursuant to medical advice or under such duress as would afford a defense to a charge of crime."

---

[3] Kentucky Revised Statutes.

-5-

However, the Kentucky legislature modified KRS 342.610 during its 2017–2018 Legislative Session by enacting House Bill 2 (HB 2), effective July 14, 2018.  The intoxication provision, section (3) of KRS 342.610, was renumbered as KRS 342.610(4) and amended to read as follows:

> If an employee voluntarily introduced an illegal, nonprescribed substance or substances or a prescribed substance or substances in amounts in excess of prescribed amounts into his or her body detected in the blood, as measured by a scientifically reliable test, that could cause a disturbance of mental or physical capacities, it shall be presumed that the illegal, nonprescribed substance or substances or the prescribed substance or substances in amounts in excess of prescribed amounts caused the injury, occupational disease, or death of the employee and liability for compensation shall not apply to the injury, occupational disease, or death to the employee.

KRS 342.610(4).  This revision eliminated the cross-reference to KRS 501.010.  It instead narrows the scope of voluntary intoxication to the terms contained within the provision itself.  Effectively, an employer can no longer disclaim liability due to a worker's "intoxication caused by substances . . . [which tend] to cause intoxication" as under the prior version of the statute, but rather the intoxication now must result from "an illegal, nonprescribed substance . . . or a prescribed substance . . . in amounts in excess of prescribed amounts."  Alcohol is not an illegal, nonprescribed substance, nor is it a prescribed substance.

After acknowledging this legislative history, the ALJ and the Board determined HB 2's exclusion of alcohol intoxication in the current version of KRS 342.610 precluded Safe Zone's reliance on the statute.

Asserting that alcohol is "one of the most prevalent and precisely detected intoxicating substances[,]" (Appellant's Br. at 6), Safe Zone asks this Court to find the statute is absurd when interpreted as the Board does. We decline.

Our opinions equate the word "absurd" with the phrase "wholly unreasonable[.]" *Bailey v. Reeves*, 662 S.W.2d 832, 834 (Ky. 1984). We cannot say it is wholly unreasonable for the legislature to draw a distinction between illegal and legal intoxicants under the current version of the statute rather than between intoxicants and nonintoxicants as it had under the former. It has been said that "courts are not concerned with the question of whether or not an act of the legislature is a good law or a bad one." *Milliken v. Harrod*, 122 S.W.2d 148, 155 (Ky. 1938). We would not agree entirely that the wisdom of legislation is of no concern to the courts, but we must admit we are powerless to do anything about a constitutional statute even if we perceive it as "bad" law. *Steven Lee Enterprises v. Varney*, 36 S.W.3d 391, 395 (Ky. 2000) (quoting *Heller v. Doe by Doe*, 509 U.S. 312, 319, 113 S. Ct. 2637, 2642, 125 L. Ed. 2d 257 (1993)) (appellate review is no "license for courts to judge the wisdom, fairness, or logic of legislative choices.").

The current version of the statute has been in force for nearly eight years. Despite opportunities to revert to the prior language of the statute, the legislature has never done so despite our entreaties to consider doing so.

This is the third time this very issue has come the Court's attention. In an unpublished opinion, *Viars v. Cumberland Millwork and Supply, Inc.*, we included by footnote certain dicta, noting "KRS 342.610(4) seems to omit alcohol. The statute mentions illegal substances and prescribed substances used in excess of the prescribed amount. Alcohol is neither illegal nor prescribed." No. 2021-CA-1178-WC, 2022 WL 333251, at *4 n.3 (Ky. App. Feb. 4, 2022). The ALJ in the case before us relied on that dicta to support her conclusion that "alcohol is not an illegal substance." (Appellant's Br. App. 2 (ALJ Order) at 7.)

After *Viars*, our Court rendered *MMJ Masonry, Inc. v. Silva*, 2025-CA-0164-WC, 2025 WL 2679624, at *1 (Ky. App. Sep. 19, 2025). Our review of the Board's decision in that case required specific analysis of KRS 342.610(4); hence, it is not dicta. However, because *MMJ Masonry* is not designated for publication, it is also not precedent. Nevertheless, we find the analysis persuasive enough to quote at length, edited with the facts of this case.

> Since the passage of House Bill 2 in 2018, "voluntary intoxication" is defined in KRS 342.610(4), which removed all references to KRS 501.010 and reads as [set forth above in block quote].

-8-

Therefore, under the statutory language of KRS 342.610(4) in effect at the time of [Perry's] injury, "voluntary intoxication" encompasses only "illegal, nonprescribed substance or substances" or "prescribed substance or substances in amounts in excess of prescribed amounts[.]" As alcohol is neither a prescribed nor an illegal substance, it does not fit within the purview of KRS 342.610(4). "[W]here a statute is amended or re-enacted in different language, it will not be presumed that the difference between the two statutes was due to oversight or inadvertence on the part of the Legislature. On the contrary, it will be presumed that the language was intentionally changed for the purpose of effecting a change in the law itself." *City of Somerset v. Bell*, 156 S.W.3d 321, 326 (Ky. App. 2005) (quoting *Eversole v. Eversole*, 185 S.W. 487, 489 (Ky. 1916)). . . .

The fact remains that no provision within KRS 342.610 addresses intoxication through the consumption of alcohol. Therefore, we affirm the ALJ as to this issue.

*Id.* at *3–4.

Additionally, we note and quote a portion of the concurring opinion of former Workers' Compensation ALJ, now Court of Appeals Judge Allison Jones, who wrote "separately to suggest that the General Assembly may wish to reexamine its most recent revision of KRS 342.610(4) [referring to the statute's 2018 version] in light of the outcome of this case." *Id.* at *4 (Jones, A., J., concurring). Judge Jones makes the valid point that "when an employee appears for work in a severely compromised state, climbs scaffolding while intoxicated, and is injured as a result, common sense suggests that workers' compensation

-9-

should not reward such recklessness." *Id.* This Court knows, however, that courts do not sit as a superlegislature. In Judge Jones's words:

> The temptation is to strain the current statutory text to reach that outcome [desired by the employer]. But doing so would be rewriting, not interpreting. The language says what it says, and our role is to apply it. If the result here is unsatisfactory as a matter of policy, the remedy lies not with the courts but with the General Assembly.

*Id.*

The current Legislative Session again provides an opportunity to consider revising KRS 342.610(4). In fact, we judicially notice that on January 15, 2026, several legislators introduced House Bills 402 and 403, both of which propose amending KRS 342.610(4). However, neither bill adds alcohol back to the statute as an intoxicant, the consumption of which by an employee who is injured would absolve the employer of workers' compensation liability. For the present, the plain meaning of the Kentucky Legislature's words permits a worker to seek benefits even if he or she is under the influence of alcohol at the time of injury.

## II. Perry's method of crossing Dixie Highway was not violative of KRS 189.570.

Next, Safe Zone argues Perry's injuries are not compensable because they occurred while he was crossing the street illegally—conduct the employer implicitly prohibits. This contention is based on KRS 189.570, which sets forth a pedestrian's duties. Safe Zone argues Perry violated KRS 189.570 because he was

intoxicated, he was not at an intersection or crosswalk, and he did not yield to vehicles upon the roadway between crosswalks. Like the ALJ and the Board, we are not persuaded by this argument.

KRS 189.570(16) prohibits a "pedestrian who is under the influence of alcohol or any kind of drug to a degree which renders himself a hazard" from walking or being upon a highway except for a sidewalk. Dr. Wolens expressed his opinion as follows:

> The one outstanding factor that cannot be known for certainty is whether Mr. Perry had alcohol in his stomach at the time of the accident. If Mr. Perry had been drinking on the job and had alcohol in his stomach at the time of accident, that alcohol would continue to be absorbed over time, which would affect his post-accident blood ethanol level. For the purpose of this report, I will assume that Mr. Perry was not drinking on the job, and he had no alcohol in his stomach at the time of his accident.

(Appellant's Br. App. 1 (Board Opinion) at 8.) Dr. Wolens continued: "Although Mr. Perry's estimated blood ethanol at the time of accident was below the Kentucky standard for driving under the influence, the level was in a range at which impairment of physical and mental function would be expected." (*Id*. at 9.)

Even with that testimony, it is reasonable to conclude Perry was not impaired at the time of the accident. The investigating officer made no reference to intoxication in his report, and he did not indicate any of Perry's conduct caused

-11-

or contributed to the accident. Also, nothing indicates that before the accident, Perry impaired his ability to perform the duties Safe Zone assigned him.

Safe Zone presents no authority for the idea that the mere presence of ethanol in a man's blood constitutes an irrebuttable presumption of impairment "to a degree which renders himself a hazard"—the standard required of KRS 189.570(16). Safe Zone argues Dr. Wolens's report is unrebutted medical proof sufficient to meet its statutory burden. Not so. Dr. Wolens deemed the predicate for a higher blood alcohol level—drinking on the job that day—was not satisfied. Neither the ALJ nor the Board was persuaded by Safe Zone's argument, holdings that are not unreasonable.

Safe Zone next argues Perry improperly failed to use a crosswalk and cites KRS 189.570(6)(c). That statute says, "Between adjacent intersections within the city limits of every city at which traffic control signals are in operation, pedestrians shall not cross at any place except in a marked crosswalk." Where Perry crossed was not a marked crosswalk.

Responding to Safe Zone's motion for reconsideration raising this point, the ALJ acknowledged her error in not stating "that the officer [working the accident] noted pedestrian factors that included not at intersection walking in roadway." (ALJ Order at 2.) But, as the ALJ noted, section (6)(a) of the same statute says, "Every pedestrian crossing a roadway at a point other than within a

-12-

marked crosswalk . . . shall yield the right-of-way to all vehicles upon the roadway." Then she noted Perry's unrebutted testimony that "he yielded to any approaching cars" as well as the fact "the driver was cited with speeding and the officer noted she was inattentive." (*Id.*) The ALJ concluded Perry complied with the law because Perry "made every attempt to yield."

## III. Perry was in the course and scope of his employment.

Safe Zone finally argues the Board erred in "holding that case law does not dictate dismissal of Perry's claim[,]" citing only one case, *U.S. Bank Home Mortgage v. Schrecker*, 455 S.W.3d 382 (Ky. 2014). The ALJ and the Board explained that *Schrecker* is distinguishable and Safe Zone does not indicate any reason why its distinguishing factors should be disregarded.

Schrecker was a U.S. Bank employee at a facility located on a busy four-lane road with a traffic island dividing the northbound and southbound lanes. Taking a break for lunch during her shift, Schrecker attempted to cross that four-lane road from the bank to a Taco Bell restaurant. She did so at a point between two intersections where there was no crosswalk. She was struck by a vehicle and sustained various injuries.

In determining whether Schrecker's injuries occurred within the course and scope of her employment, the court explicitly stated it was not adopting "a blanket operating premises rule with regard to employee injuries that occur

during personal comfort breaks." *Id*. at 387. "Rather, we hold that cases involving such injuries must be evaluated on a case-by-case basis. In doing so, the ALJ must determine the extent to which the employer exercised authority over the employee during his/her break." *Id*. The court then provided a nonexhaustive list of factors to consider, including:

> whether the employee is paid during the break; the length of the break; the extent to which the employer limits the employee's activities during the break; how far from the employer's premises the employee was when injured; whether the employee's activity during the break amounted to a substantial deviation from seeking personal comfort; whether the hazard encountered by the employee flowed from employment or was part of normal going and coming activities; and whether the employee's activity was expressly or impliedly prohibited by the employer.

*Id*. The most obvious factor distinguishing that case from this is the workplace: Schrecker worked at a brick-and-mortar bank while Perry's worksite was literally on the road out of doors. The employees' purposes for departing their respective worksites also differed in that Schrecker was taking a late lunch break. Perry's break was brief and, while it could be said his purchase during that break was for his personal comfort, the length of his workday drained his phone battery, and the purchase of a charger maintained in operation the device Safe Zone relied upon to communicate with Perry.

We agree with the ALJ that Perry's regular job duties as a flagger increase his risk of exposure to street hazards flowing from his employment

-14-

conditions. The *Schrecker* court said "hazards encountered by [an] employee while off premises must also be considered. If those hazards do not flow from employment conditions or are not encountered as part of the normal going to and coming from the premises activities, the employer should not have liability." *Schrecker*, 455 S.W.3d at 386 (citing ARTHUR LARSON, LARSON'S WORKERS' COMPENSATION LAW § 13.05(4) (2011)). Although technically away from worksite premises, Perry's injuries occurred from a hazard flowing from the nature of his job at Safe Zone. Perry was momentarily away from his specific station working as a flagger who spent authorized time to retrieve a cellphone charger from a nearby store experiencing essentially the same vehicle hazard that is inseparable from the job.

We find no fault in the ALJ's and the Board's interpretation of *Schrecker* or their application of its factors to this case.

## CONCLUSION

For the foregoing reasons, the Board's Order is AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:

Kelley D. Gray
James T Carey, II
Louisville, Kentucky

BRIEF FOR APPELLEE DONNELL
PERRY:

Wayne C. Daub
Louisville, Kentucky