**U.S. BANK HOME MORTGAGE,**
Appellant

v.

Andrea SCHRECKER; Honorable J. Landon Overfield, Administrative Law Judge; and Workers' Compensation Board, Appellees

2012–SC–000665–WC

Supreme Court of Kentucky.

RENDERED: DECEMBER 18, 2014

Rehearing Denied April 2, 2015

COUNSEL FOR APPELLANT: James Gordon Fogle, Louisville, Stephanie Dawn Ross, Lexington, Fogle Keller Purdy, PLLC, Sherri Lynn Keller, Ferreri & Fogle, PLLC

COUNSEL FOR APPELLEE: Thomas M. Rhoads, Rhoads & Rhoads, P.S.C., Madisonville

OPINION OF THE COURT BY JUSTICE KELLER

The Administrative Law Judge (the ALJ) found that Andrea Schrecker's (Schrecker) injury is work-related and compensable. The Workers' Compensation Board (the Board) and the Court of Appeals affirmed. Having reviewed the

record and the arguments of the parties, we reverse.

## I. FACTS.

Schrecker worked in the payment processing department at U.S. Bank Home Mortgage (U.S. Bank). The U.S. Bank facility is located on Frederica Street in Owensboro, Kentucky. Frederica Street is a busy four-lane road with a traffic island dividing the northbound and southbound lanes. As a full-time U.S. Bank employee, Schrecker was entitled to a one hour unpaid lunch-break and two fifteen-minute paid breaks per day. US Bank did not have an onsite cafeteria, but it did have a lunchroom and vending machine that were available for employees' use. During their breaks, employees were permitted to leave the premises, and they often did, going to fast food restaurants that are across Frederica Street from U.S. Bank.

On December 31, 2007, one of Schrecker's co-employees was absent; therefore, Schrecker decided to work through her lunch-break. At approximately 1:30 p.m., Schrecker signed out for her paid afternoon break, with the intention of getting something to eat from the Taco Bell across Frederica Street from U.S. Bank and returning to work. Based on Schrecker's testimony and the police report that was entered into evidence, Schrecker was crossing Frederica Street at a point between two intersections where there was no cross-walk. The driver in the outside northbound lane stopped and waved for Schrecker to cross. The driver in the inside northbound lane did not see Schrecker and, when she crossed into that lane, struck her. Schrecker was treated

for her injuries at the scene and returned to work. She continued to work at U.S. Bank until June 2008, when she was terminated.[1]

The dissent emphasizes several times that Schrecker was under "employer-generated time pressure" because she had skipped her lunch break and had "to quickly grab food from a fast food restaurant across the street." While it is true that Schrecker did not take her lunch break when she usually did, there is nothing in the record indicating that she could not have taken her lunch break at 1:30 p.m. In fact, the evidence established that employees had no set lunch time and that a supervisor, Jennifer Roberts, had previously advised Schrecker that she was always entitled to a lunch break. Furthermore, Schrecker testified that three to five days a week she took the three minute trip across the street to get something to eat during her afternoon break. Therefore, the dissent's emphasis on an "employer-generated time pressure" is not supported by the record.

Following the injury, Schrecker complained of pain in her mid and low back, chest, right shoulder, left knee, and left calf. She also complained of headaches, depression, memory loss, difficulty concentrating, and sleep disturbance related to a traumatic brain injury suffered when her head struck the car's windshield. As a result of that injury, Schrecker has had difficulty working and functioning as she did in the past. The parties filed a significant amount of evidence regarding Schrecker's mental and physical conditions. We do not summarize that evidence because our holding only involves whether

---

1. We note that the parties dispute why Schrecker was terminated. She claims it was because she could no longer adequately perform her job duties following her injury. However, U.S. Bank employees testified that she was terminated because she abandoned her job by taking an unapproved vacation. Regardless, it is undisputed that Schrecker had already started another job when her employment at U.S. Bank ended.

Schrecker's injury occurred in the course and scope of her employment.

Based on the evidence and our Opinion in *Meredith v. Jefferson County Property Valuation Administrator*, 19 S.W.3d 106 (Ky.2000), the ALJ concluded that Schrecker's injury occurred while she was within the course and scope of her employment. He then awarded Schrecker medical expense benefits and income benefits based on a fifteen percent impairment rating. US Bank filed a petition for reconsideration, which the ALJ summarily denied.

US Bank then appealed to the Board. The Board noted that the only issue before it was whether Schrecker's injury occurred within the course and scope of her employment. It then reviewed passages from *Larson's Workers' Compensation Law* (2011), *9A Couch on Insurance 3d* (2011), and 82 Am.Jur.2d *Workers' Compensation* regarding the "personal comfort doctrine." Based on its review, the Board concluded that the ALJ did not err in finding that Schrecker's injury occurred in the course and scope of her employment.

US Bank appealed to the Court of Appeals, which affirmed the Board. The Court of Appeals, also citing to *Larson's* and *Couch*, affirmed the Board, noting that Schrecker was injured while on a paid break seeking refreshment and that U.S. Bank condoned employees crossing the street during such breaks. US Bank appealed from that opinion, again arguing that Schrecker's injury occurred outside the course and scope of her employment.

## II. STANDARD OF REVIEW.

■ When reviewing an ALJ's decision, this Court will reverse only if the ALJ overlooked or misconstrued controlling law or so flagrantly erred in evaluating the evidence that it has caused gross injustice. W. *Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687–88 (Ky.1992). On appel-

late review, the ALJ's findings of fact are entitled to considerable deference and will not be set aside unless the evidence compels a contrary finding. *Bullock v. Peabody Coal Co.*, 882 S.W.2d 676 (Ky.1994). However, we review the ALJ's application of the law *de novo*. *See Finley v. DBM Techs.*, 217 S.W.3d 261, 264 (Ky.App.2007).

## III. ANALYSIS.

■ As previously indicated, the issue herein is whether Schrecker was in the course and scope of her employment when injured. US Bank argues that Schrecker was not because: (1) she was not on U.S. Banks operating premises when the injury occurred; (2) she had temporarily abandoned her job; and (3) she lost any protection she may have had by virtue of the personal comfort doctrine when she took an unreasonable route to get from U.S. Bank to Taco Bell. Schrecker argues that she was within the course and scope of her employment because: (1) she was on a paid break; (2) U.S. Bank benefitted generally from the increased employee morale the breaks provided and specifically benefitted from Schrecker working through her lunch break that day; (3) U.S. Bank permitted employees to leave the premises and to cross Frederica Street to seek refreshments on their breaks; (4) employees regularly crossed the street seeking refreshments during their breaks; and (5) there is no evidence that Schrecker had any motive other than personal comfort for crossing the street.

In support of its argument, U.S. Bank cites to *Baskin v. Community Towel Service*, 466 S.W.2d 456 (Ky.1971). In *Baskin*, Mr. Baskin and a co-employee were injured while returning to work after taking an unpaid lunch break. We held that their claims were not compensable because, as employees with a fixed time and place of work, they were outside the

course of employment while off the Community Towel Service's premises during lunch. *Baskin* is distinguishable because Shrecker was on a paid, not an unpaid break. Furthermore, in *Meredith v. Jefferson County Property Valuation Administrator,* 19 S.W.3d 106 (Ky.2000) we recognized that "the doctrine of comfort and convenience" could extend beyond the boundaries of an employer's premises. *Id.* at 108.

In *Meredith,* Mr. Meredith worked as a field representative for the Kentucky Revenue Cabinet. His job required him to travel to local banks to inventory the contents of safety deposit boxes for estate tax purposes. On the date of his injury, Mr. Meredith went to his office, picked up his appointment schedule, and drove to his first appointment. He arrived early and, because he could not get into the bank, he went to a nearby McDonald's. While walking with his tray from the counter to a table, Mr. Meredith fell and suffered a serious back injury. We note that there is nothing in either our opinion or the Court of Appeals's opinion in *Meredith* which indicates why Mr. Meredith fell or if Mr. Meredith encountered any abnormally hazardous conditions at McDonald's.

In finding Mr. Meredith's claim compensable, we noted that injuries "sustained during a personal mission ... [generally occur] outside the course of employment; however, under certain circumstances, an injury resulting from acts by a worker which minister to his personal comfort while at work may be considered related to work pursuant to the doctrine of comfort and convenience." *Id.* at 108. We noted that a number of factors must be considered in applying that doctrine, including: whether an employee's abandonment of his job was intended to be only temporary; whether an employee's departure from his job was "so unreasonable that it cannot be considered an incident of the employment;" whether the nature of the job includes periods of "enforced hiatus" such as waiting for appointments; and whether the employer prohibits the employee from taking a coffee break during those periods. Taking those factors into consideration, we held that Mr. Meredith was within the course and scope of his employment when he was injured. *Id.* at 108–10. While instructive, *Meredith* is not dispositive because Mr. Meredith, unlike Schrecker, did not have a fixed place of employment.

As the Board stated, there is no case law directly on point in Kentucky. Therefore, like the Board and the Court of Appeals, we turn to other sources for guidance. With regard to employees with fixed places of employment, Professor Larson states as follows:

Now that the coffee break or rest break has become a fixture of many kinds of employment, close questions continue to arise on the compensability of injuries occurring off the premises during rest periods or coffee breaks of various durations and subject to various conditions. It is clear that one cannot announce an all-purpose "coffee break rule," since there are too many variables that could affect the result. The duration might be five minutes, seven minutes, 10 minutes, or even 20 minutes by which time it is not far from that of a half-hour lunch period. Other variables may involve the question whether the interval is a right fixed by the employment contract, whether it is a paid interval, whether there are restrictions on where the employee can go during the break, and whether the employee's activity during this period constituted a substantial personal deviation.

The operative principle which should be used to draw the line [regarding liability for off premises accidents during paid

breaks] is this: If the employer, in all the circumstances, including duration, shortness of the off-premises distance, and limitations on off-premises activity during the interval can be deemed to have retained authority over the employee, the off-premises injury may be found to be within the course of employment. Arthur Larson, *LARSON'S WORKERS' COMPENSATION LAW*, § 13.05(4) (2011). Additionally, Professor Larson indicates that the hazards encountered by the employee while off premises must also be considered. If those hazards do not flow from employment conditions or are not encountered as part of normal going to and coming from the premises activities, the employer should not have liability. *Id.*

We find the preceding to be persuasive and note that Professor Larson's factors are similar to those we set forth in *Meredith* to determine when liability attaches to an off-premises injury occurring during a break for an employee with no fixed place of employment. Applying Professor Larson's factors, we must conclude that the ALJ erred when he found that Schrecker was within the course and scope of her employment when injured.

Schrecker's break was: relatively short in duration; paid; and sanctioned, if not encouraged, by U.S. Bank. These factors weigh in favor of Schrecker as they are indicia of U.S. Bank's exercise of authority over Schrecker. Schrecker was free to go wherever she pleased and to do whatever she wanted to do on her break. These factors weigh in favor of U.S. Bank as they are indicia of US. Bank's lack of authority over Schrecker. If this were all of the evidence, we would likely defer to the ALJ. However, one factor—the hazard Schrecker encountered—outweighs the others. By crossing the street between intersections and walking in front of a moving vehicle, Schrecker voluntarily exposed herself to a hazard so completely outside those normally encountered in going to or coming from work as to negate any authority U.S. Bank may have had over her.

We deem this element, varying from the normal going and coming process, to be conclusive based, in large part, on our holding in *Ratliff v. Epling*, 401 S.W.2d 43 (Ky.1966). In *Ratliff*, a coal miner (Ratliff) made arrangements to ride home with a co-worker. After leaving the mine at the end of their shift, the two walked to the parking lot and discovered that the co-worker's car would not start. While the co-worker went to get help with starting his car, Ratliff began gathering loose pieces of coal for his personal use. Approximately one-half hour later, a "high wall" that Ratliff was standing near collapsed, killing him. *Id.* at 44.

The Court held that Ratliff s injury was not work-related. In doing so, the Court first determined that Ratliff was within the employer's operating premises. The Court then held that, when Ratliff left the car and began gathering coal, he deviated from the normal coming and going activity of leaving the work station, proceeding to the parking lot, and leaving the employer's property. Because of that deviation, Ratliff s claim was properly denied. *Id.* at 45–46.

Schrecker, like Ratliff, deviated from normal going and coming activity by crossing the street between intersections. Furthermore, Schrecker, unlike Ratliff, was injured while off her employer's premises. Because Ratliff s deviation from normal going and coming activities barred his on-premises injury claim, Schrecker's deviation must also bar her off-premises injury claim.

The dissent states that we inject negligence into workers' compensation claims by this opinion. However, that is not the

case. We have not, and do not, hold that Schrecker's claim is not compensable because she was at fault for her injury. What we do hold is that her claim is not compensable because, like the claimant in *Ratliff*, she deviated from normal coming and going activities and that deviation mandates denial of her claim.

As Prof. Larson notes, in even "borderline situations such as personal comfort" courts should not delve into negligence, which turns on the "at best rubbery yardstick" of reasonableness, but should apply "the concept of implied prohibition...." *LARSON'S WORKERS' COMPENSATION LAW*, § 21.08(4)(d).

> [T]he implied prohibition test ... permits us to draw a consistent pattern of principle uniting the rules of unreasonableness and prohibited method. We first divide all activities into operating acts and incidental acts. As to operating acts, that is, acts in direct performance of the precise tasks assigned to the claimant, we find that method—whether unreasonable, impliedly prohibited, or even expressly prohibited—is immaterial. As to incidental acts and situations, including ... personal comfort, ... we find that a single test will also suffice: they are outside the course of employment if they are expressly or impliedly forbidden.

*Id.*

Applying the implied prohibition test herein, we note that KRS 189.570(6)(a) states that: "Every pedestrian crossing a roadway at a point other than within a marked crosswalk or within an unmarked crosswalk at an intersection, shall yield the right-of-way to all vehicles upon the roadway." Schrecker's action, failing to yield to a vehicle on the roadway, was expressly forbidden by the Commonwealth, and impliedly forbidden by U.S. Bank. Therefore, we reverse the Court of Appeals and re-mand this matter to the ALJ for entry of an opinion and order dismissing Schrecker's claim.

## IV. CONCLUSION.

Although encouraged to do so by U.S. Bank, we do not adopt a blanket operating premises rule with regard to employee injuries that occur during personal comfort breaks. Rather, we hold that cases involving such injuries must be evaluated on a case-by-case basis. In doing so, the ALJ must determine the extent to which the employer exercised authority over the employee during his/her break. The factors to consider include, but are not limited to: whether the employee is paid during the break; the length of the break; the extent to which the employer limits the employee's activities during the break; how far from the employer's premises the employee was when injured; whether the employee's activity during the break amounted to a substantial deviation from seeking personal comfort; whether the hazard encountered by the employee flowed from employment or was part of normal going and coming activities; and whether the employee's activity was expressly or impliedly prohibited by the employer. Because Schrecker undertook a route to seek personal comfort that exposed her to a hazard completely removed from normal going and coming activity, and which was expressly prohibited by the Commonwealth and impliedly prohibited by U.S. Bank, we reverse the Court of Appeals and remand to the ALJ for entry of an order dismissing Schrecker's claim.

All sitting. Minton, C.J., Abramson, Noble and Venters, JJ., concur. Scott, J., dissents by separate opinion in which Cunningham, J., joins.

SCOTT, J., DISSENTING:

I begin my dissent with a brief recounting of some of the facts overlooked in this case. On December 31, 2007, Andrea Schrecker began her workday at 7:00 a.m. She did not take her lunch break that day because a co-worker was absent and her employer needed her to complete work to meet end-of-the-year deadlines. After working until 1:30 p.m. without a lunch break, a period of six-and-a-half hours, she took one twenty-minute paid break to try to quickly grab food from a fast food restaurant across the street. Under pressure to return to work within twenty minutes, Schrecker tried to cross the road at the closest place without using a crosswalk. Regrettably, she was struck by a vehicle and suffered injuries that continue to impair her ability to work and function today as she did prior to the accident; so much for a good deed!

The majority, however, chooses to follow precedents that have nothing to do with the work and time pressures Andrea experienced. In fact, the majority now cites to normal work patterns on normal work days as evidence of her fault on this abnormal work day. Ignoring the accumulated workplace and time pressures Schrecker faced and handled that hectic day (solely for the benefit of her employer), today's opinion places the blame for her injuries squarely on her shoulders. This is a betrayal of our precedents establishing that the Workers' Compensation Act is to be construed liberally, and it contradicts the Act's no-fault standard. For these reasons, I cannot join the majority in their opinion, but would affirm the Court of Appeals, which (similarly to the ALJ and the Workers' Compensation Board) held that Schrecker *was entitled* to recover for her work-related injuries. Three out of four is not bad.

I do so because our decisions have recognized that, "[a]lthough the employee and the employer have rights under the [Workers' Compensation] Act, the primary purpose of the law is to aid injured or deceased workers." *Zurich Am. Ins. Co. v. Brierly*, 936 S.W.2d 561, 563 (Ky.1996); *see also, e.g., Apex Mining v. Blankenship*, 918 S.W.2d 225, 229 (Ky.1996) ("[T]he Workers' Compensation Act is social legislation...."); *Grimes v. Goodlett*, 345 S.W.2d 47, 51 (Ky.1961) (explaining that the "fundamental object" of workers' compensation law is to secure employees against physical disabilities resulting from employment). To that end, we have held that the Act is to be "construed liberally and in a manner consistent with accomplishing the legislative purpose." *Blankenship*, 918 S.W.2d at 229. In so doing, we have promoted the no-fault standard underlying the Act.[2] As applied here, our policy of liberal construction of the Act should ensure that an employee injured during a brief pause from her labor for the purpose of ministering to her personal comfort should be compensated without regard to fault. *See Meredith v. Jefferson Cnty. Prop. Valuation Adm'r*, 19 S.W.3d 106, 108 (Ky.2000). Yet, the majority reaches a contrary result. Because the Court today fails to protect injured Kentucky workers' statutory rights to recover for work-related injuries, I respectfully dissent.

The majority explains that it reached its result after considering several variables identified by Professor Larson in his treatise on workers' compensation law. Lar-

---

2. The fundamental premise of the Worker's Compensation Act is that injured employees should recover without regard to fault. *See* KRS 342.610. Stated differently, a worker's negligence is not a factor in determining whether an injury is work-related. *Warrior Coal Co. v. Stroud*, 151 S.W.3d 29, 31 (Ky. 2004).

son's variables are meant to help determine whether an employee was within the scope of her employment when she was injured during an off-premises break. 1 Arthur Larson, *Larson's Workers' Compensation Law* § 13.05[4] (2011). As the majority notes, Larson's considerations include: the duration of the break, whether it was paid, whether there were restrictions on where the employee could go during the break, and whether the employee's activity during this period constituted a substantial personal deviation from her employment. Furthermore, the majority agrees with Larson that the operative principle to be determined by the consideration of these variables is whether the employer can be deemed to have retained authority over the employee during the break. I, however, would add to Larson's list consideration of employer time pressures that factor into employee decisions.

Continuing with the majority's analysis, it found that several factors mitigated in favor of Schrecker, including that Schrecker's break was short in duration, paid, and sanctioned by U.S. Bank. However, the majority also found that the employer's lack of restrictions over Schrecker's movement during her break indicated a lack of control. I disagree because employer-generated time pressure is a control factor.

Most importantly, the opinion notes that, "[i]f this were all the evidence, we would likely defer to the ALJ." Only after this admission does the opinion find that Schrecker committed a substantial personal deviation from her employment by stepping into the street. In effect, the majority holds that Schrecker's negligence superseded the other variables, and removed her from U.S. Bank's authority.

I simply disagree. First, because I believe that the employer exerted control over Schrecker through accumulated workplace and time pressures and that the majority's analysis of the employer's authority is at odds with our policy of liberally construing workers' compensation law. And second, because of the manner in which today's opinion injects a fault analysis into workers' compensation law.

Beginning with the issue of U.S. Bank's control over Schrecker, I would note that although U.S. Bank did not limit where Schrecker could go on her break, it did require her to clock "out and in," which is an indication of control in these short time spans. Thus, U.S. Bank exerted control over Schrecker through work-related pressure for her to quickly return to work. In this sense, the employer's continuing control came from the special circumstances and urgency surrounding the meal connected with the increased employer deadline needs because of the absent employee. Professor Larson's treatise recognizes that the employer exerts control over the employee when it encourages a quick meal for the employer's benefit. *Id.* § 13.05[2] & [4]. We have simply ignored this here.

Thus, it is entirely reasonable to me to assume that Schrecker did not work six-and-a-half hours without a meal and then rush out to get a quick bite to eat because she wanted to. Her actions were the result of influence asserted by U.S. Bank, and she hurried across the street for her employer's benefit and to save the employer's time. I find nothing unusual or startling about an employee making an absent-minded mistake after a day filled with workplace deadline pressure. The hasty method with which she crossed the street is just as attributable to accumulated workplace and time pressure as it is to her negligence (what the majority calls a substantial personal deviation), thus I would find that her injuries were work-related. Therefore, adhering to our policy of liberally construing workers' compensation, I would have found that U.S. Bank retained

sufficient authority over Schrecker to allow her to recover for her work-related injuries.

My viewpoint on this issue is neither novel nor controversial. In fact, several other jurisdictions have decided cases on similar grounds. In *King Waterproofing Co. v. Slovsky,* the claimant planned to use his twenty-minute paid break to go to a nearby restaurant. 71 Md.App. 247, 524 A.2d 1245, 1246 (1987). He was struck by a vehicle while attempting to cross the street. *Id.* at 1248. The court held that his injury was compensable because he had not deviated from his pursuit of personal comfort. *Id.* at 1249. Similarly, in *Rankin v. Workmens' Comp. Appeals Bd.,* the claimant had taken off six hours for personal reasons and agreed to make it up by working lunch hours. 17 Cal.App.3d 857, 95 Cal.Rptr. 275 (1971). During a working lunch hour, she left the premises to get a sandwich and was assaulted while returning. *Id.* The court held that the claimant was on an errand that was for her personal comfort which was to the advantage of her employer, thus, her injuries were compensable. *Id.* As another example, in *State Dep't of Labor v. Yates,* the decedent worked through his lunch hour due to the heavy demands made upon him at work. 131 Ga.App. 71, 205 S.E.2d 36, 37 (1974). Late that afternoon, he left for a nearby store to purchase some cookies. *Id.* As he was returning he fell and suffered a fatal head injury. *Id.* The board found, and the court affirmed, that he was within the scope of his employment. *Id.* I believe that the approach taken by the above-cited jurisdictions more accurately embodies the inclusive spirit of our Workers' Compensation Act than the ruling issued by this Court today. The Act meant to remove the tort law concept of fault from workers' compensation cases. Regrettably, the view taken by the majority today reinserts this concept. In the ma-

jority's hands, an Act meant to be liberally construed to protect Kentucky's workers without regard to fault threatens to become nearly the opposite—a mechanism by which employers can insulate themselves from liability by asserting contributory negligence. The Court thus undermines the no-fault premise of the Worker's Compensation Act no less than it does our precedent liberally construing the Act. Thus, I must respectfully dissent.

Cunningham, J., joins.