# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

2015-SC-000506-WC

FANNIE L. CRUSE          APPELLANT

ON APPEAL FROM COURT OF APPEALS
CASE NO. 2014-CA-001439-WC
V.          WORKERS' COMPENSATION BOARD
NO. 10-WC-73734

HENDERSON COUNTY BOARD OF          APPELLEES
EDUCATION; JANE RICE WILLIAMS,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

Fannie L. Cruse alleged that she suffered a number of injuries as the result of a fall while working for the Henderson County Board of Education (Henderson County). The Administrative Law Judge (ALJ) found that only one of Cruse's alleged injuries was permanent and awarded income and medical expense benefits accordingly. Based on KRS 342.730(4) and Cruse's age, the ALJ limited Henderson County's liability for income benefits to two years. The Workers' Compensation Board (the Board) and the Court of Appeals affirmed the ALJ. For the following reasons, we affirm the ALJ's findings regarding the extent of Cruse's work-related injuries. However, because KRS 342.730(4)

violates Cruse's right to equal protection, we reverse the ALJ's finding regarding the duration of Cruse's entitlement to income benefits. Finally, we remand this matter to the ALJ for an award consistent with this opinion.

## I. BACKGROUND.

Cruse was born on February 27, 1939, completed the sixth grade, and obtained her GED in 2002. Prior to working for Henderson County in 1999, Cruse occasionally worked babysitting and cleaning offices. For Henderson County, Cruse worked as a child care worker in one of the school system's after-school programs. Her job required her to assist children with various learning tasks in the classroom and to supervise them on the school playground.

On October 14, 2010, Cruse, who was 71 years of age at the time, tripped and fell on the school playground. Following this incident, Cruse filed an Application for Resolution of Injury Claim alleging that she suffered injuries to her "left and right shoulders, bicep, knees, ankle, foot, neck, back, and toes." In support of her claim, Cruse filed medical records from Drs. Johnson, O'Neill, Deppe, and Whitacre, a report from Dr. Barefoot, and miscellaneous other medical records. Henderson County filed additional records from Drs. Johnson and O'Neill, a report from Dr. Primm, and miscellaneous other medical records. Additionally, the parties filed transcripts of Cruse's deposition, Dr. Barefoot's deposition, and Dr. Primm's deposition. We summarize the pertinent parts of the parties' proof below.

2

Dr. Johnson, who primarily treated Cruse for her complaints of left shoulder pain, performed left rotator cuff surgery on April 9, 2011. On May 12, 2011, Dr. Johnson stated that Cruse had reached maximum medical improvement. He assigned Cruse a 6% impairment rating for her left shoulder condition and released Cruse to return to work with no restrictions.

Dr. Deppe treated Cruse for complaints of bilateral knee pain. Although Dr. Deppe initially thought Cruse had a torn meniscus in her left knee, diagnostic testing revealed only degenerative changes. Dr. Deppe last treated Cruse in July 2011, when he released her to return to work with no restrictions. Dr. Deppe did not address whether Cruse has an impairment rating.

Dr. Whitacre treated Cruse for complaints of neck pain that she related to the work injury. In June 2011, Dr. Whitacre performed a cervical spine epidural, and he released Cruse from his care with no restrictions in July 2011. Like Dr. Deppe, Dr. Whitacre did not address whether Cruse has an impairment rating.

Dr. O'Neill treated Cruse conservatively for complaints of foot pain that Cruse related to the injury. Cruse last treated with Dr. O'Neill in November 2012 and his only restriction was to wear comfortable shoes. Like Drs. Deppe and Whitaker, Dr. O'Neill did not address whether Cruse has an impairment rating.

Dr. Barefoot performed an independent medical evaluation of Cruse in July 2013 at the request of Cruse's attorney. In his report, Dr. Barefoot noted

3

Cruse's complaints of: neck pain radiating into both upper extremities; pain and weakness in both shoulders, left greater than right; and left heel pain. Following his examination, Dr. Barefoot made diagnoses of: left Achilles tendonitis; metatarsalgia of the right foot; status post-left long finger surgery; left rotator cuff repair; degenerative osteoarthritis of the left knee; cervical degenerative disc disease with radiculopathy; arthritis; hypertension; carpal tunnel syndrome; and status post-2009 rotator cuff surgery. Dr. Barefoot assigned Cruse a total impairment rating of 23%, some of which he attributed directly to the injury and some of which he attributed to the arousal of pre-existing dormant conditions by the injury. Finally, Dr. Barefoot stated that Cruse would have difficulty crouching, walking distances, kneeling, crawling, squatting, using her arms above shoulder level, and lifting and using her hands repetitively.

In his deposition, Dr. Barefoot admitted that he was not aware that Cruse was involved in several motor vehicles accidents that preceded her work injury and that resulted in temporary complaints of neck pain. He was also unaware that Drs. Johnson, Deppe, Whitacre, and O'Neill had released Cruse to return to work without restrictions, and he did not have any of Cruse's medical records pre-dating 2010. Finally, Dr. Barefoot stated that he had not imposed any specific restrictions on Cruse's work activity, but opined that she could perform sedentary work with no overhead activity.

Dr. Primm performed an independent medical evaluation of Cruse in August 2013 at the request of Henderson County. Cruse complained to Dr.

4

Primm of neck and shoulder pain. Following his examination, Dr. Primm made diagnoses of: history of chronic cervical pain; status post-spontaneous rotator cuff tear and repair; temporary aggravation of degenerative changes in the cervical spine as a result of the work injury; resolved left great toe strain; left shoulder rotator tear with surgical repair; and resolved bilateral knee contusions. Dr. Primm stated that the only permanent injury Cruse suffered as a result of her fall at work was to her left shoulder. Based on that injury, Dr. Primm assigned Cruse a 7% impairment rating and restricted her to lifting no more than 8-10 pounds. Dr. Primm stated that all of Cruse's other conditions were either not related to the work injury or had resolved. Dr. Primm's deposition testimony was essentially consistent with his report.

Based on the preceding the ALJ found as follows:

It is clear [Cruse] has many long standing [sic] problems and many degenerative changes which were not brought on by the work injury. Dr. Primm is found most persuasive. While Dr. Barefoot's report and deposition have been considered, his opinion is not convincing as he attributes so much of Cruse's complaints, even carpal tunnel syndrome, to the work injury. Clearly Cruse suffered a hard fall at work resulting in multiple injuries, most temporary. Only the shoulder injury is found to have resulted in permanent injury with the other injuries resolving completely to the pre-injury state within the following year. Furthermore, based on Cruse's shoulder condition alone, she could return to her former job. While Dr. Primm noted a few lifting restrictions and discussed those in his deposition, there is no proof this restriction would prohibit her from returning to work.

The ALJ then awarded Cruse the appropriate amount of temporary total and permanent partial disability income benefits based on her findings. However, based on KRS 342.730(4) and Cruse's age at the time of injury, the

5

ALJ limited Henderson County's liability for income benefits to two years. Cruse appealed to the Board, which affirmed, as did the Court of Appeals. We set forth additional necessary background information below.

## II. STANDARD OF REVIEW.

The ALJ has the sole discretion to determine the quality, character, and substance of the evidence and may reject any testimony and believe or disbelieve various parts of the evidence regardless of whether it comes from the same witness or the same party's total proof. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985). Cruse had the burden of proving which of her conditions are related to the work injury. *Gibbs v. Premier Scale Company/Indiana Scale Co.*, 50 S.W.3d 754, 763 (Ky. 2001), *as modified on denial of reh'g* (Aug. 23, 2001). If the party with the burden of proof fails to convince the ALJ, that party must establish on appeal that the evidence was so overwhelming as to compel a favorable finding. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). In other words, because Cruse was unsuccessful before the ALJ, she must show that the ALJ's findings were clearly erroneous and unreasonable. *Id.* While we give great deference to the ALJ's factual findings, we review questions of law, *i.e.* whether KRS 342.370(4) is constitutional, *de novo. See U.S. Bank Home Mortgage v. Schrecker*, 455 S.W.3d 382, 384 (Ky. 2014).

With the preceding standards in mind, we first address Cruse's argument that the ALJ's finding that only her left shoulder condition is related to the work injury is clearly erroneous. We then address whether the evidence

6

compelled a different finding regarding the extent and duration of Cruse's disability. Finally, we address Cruse's arguments that KRS 342.730(4) has been preempted by federal age discrimination law and that it violates her right to equal protection.

## III. ANALYSIS.

### A. The evidence did not compel the ALJ to find that the work injury permanently aroused Cruse's pre-existing cervical spine, bilateral knee, and right shoulder conditions.

Cruse argues that the evidence compelled a finding that she suffered from pre-existing dormant degenerative changes in her cervical spine, knees, and right shoulder, and the evidence compelled a finding that those degenerative changes were permanently aroused into disabling reality by the work injury. We disagree.

As stated in *Finley v. DBM Techs.*, 217 S.W.3d 261, 265 (Ky. App. 2007),

> a pre-existing condition that is both asymptomatic and produces no impairment prior to the work-related injury constitutes a pre-existing dormant condition. When a pre-existing dormant condition is aroused into disabling reality by a work-related injury, any impairment or medical expense related solely to the pre-existing condition is compensable. A pre-existing condition may be either temporarily or permanently aroused. If the pre-existing condition completely reverts to its pre-injury dormant state, the arousal is considered temporary. If the pre-existing condition does not completely revert to its pre-injury dormant state, the arousal is considered permanent, rather than temporary.

From the medical records it is clear that Cruse had pre-existing changes to her cervical spine, knees, and right shoulder which were asymptomatic immediately prior to the work injury. There is no indication in Cruse's medical records that any physician had assigned her any impairment rating or

7

restricted her activity because of those pre-existing conditions. Furthermore, based on Cruse's testimony, those pre-existing conditions became symptomatic following the work injury. Finally, via Dr. Barefoot's report and testimony, Cruse presented evidence that the arousal of those pre-existing conditions resulted in permanent impairment/disability. Therefore, Cruse met her burden of proving that the work injury aroused the previously dormant conditions into disabling reality.

However, Henderson County presented evidence to the contrary. The physicians who treated Cruse for her cervical spine, bilateral knee, and right shoulder complaints all released her from their care with no restrictions. Furthermore, none of Cruse's treating physicians assigned Cruse any impairment rating related to those conditions. Based on his review of the medical records, Dr. Primm stated Cruse's pre-existing cervical spine, bilateral knee, and right shoulder conditions had only been temporarily exacerbated. Dr. Primm concluded that the only permanent work-related injury Cruse suffered was to her left shoulder. That medical evidence was sufficient to support the ALJ's findings and Cruse's evidence to the contrary did not compel a different result. Therefore, we affirm the ALJ's finding that Cruse's only permanently compensable injury was to her left shoulder.

**B.    The evidence did not compel a different finding regarding the extent and duration of Cruse's disability.**

The ALJ found that Cruse has a 7% permanent impairment rating and is able to return to work. Based on those findings, the ALJ awarded Cruse permanent partial disability income benefits rather than the permanent total

8

disability benefits Cruse sought. Cruse argues that the evidence compelled a finding that she is permanently and totally disabled. In the alternative, Cruse argues that she is entitled to enhanced benefits pursuant to KRS 342.730(1)(c)1. We disagree.

**1.  Permanent total disability.**

KRS 342.0011(11)(c) provides, in pertinent part, that permanent total disability "means the condition of an employee who, due to an injury, has a permanent disability rating and has a complete and permanent inability to perform any type of work as a result of an injury." KRS 342.0011(34) defines work as "providing services to another in return for remuneration on a regular and sustained basis in a competitive economy." To determine if an employee is permanently and totally disabled, an ALJ must consider:

> factors such as the worker's post-injury physical, emotional, intellectual, and vocational status and how those factors interact. It also includes a consideration of the likelihood that the particular worker would be able to find work consistently under normal employment conditions. A worker's ability to do so is affected by factors such as whether the individual will be able to work dependably and whether the worker's physical restrictions will interfere with vocational capabilities. The definition of "work" clearly contemplates that a worker is not required to be homebound in order to be found to be totally occupationally disabled.

*Ira A. Watson Dep't Store v. Hamilton*, 34 S.W.3d 48, 51 (Ky. 2000) (citation omitted).

Cruse testified that, because of her myriad complaints, she could not return to work for Henderson County or any other employer. In a vacuum, that testimony may have compelled a finding in her favor. However, none of

9

Cruse's treating physicians imposed any permanent restrictions on her ability to perform work activity. Furthermore, although Dr. Barefoot stated that Cruse would have difficulty performing numerous tasks, he did not impose any specific restrictions and stated Cruse could perform sedentary work with no overhead activity. Dr. Primm stated that he would only restrict Cruse from lifting more than 8 to 10 pounds above shoulder level. Taking into account Cruse's advanced age, education, training, experience, and the medical evidence, we cannot say that the ALJ was compelled to find Cruse to be permanently and totally disabled.

## 2. Enhanced benefits under KRS 342.730(1)(c)1.

Pursuant to KRS 342.730(1)(c)1, an employee who is able to return to work but is unable to return to the type of work performed at the time of injury is entitled to receive benefits at three times the rate otherwise payable. Cruse argues that the evidence compelled the ALJ to find that she cannot return to the type of work she performed at Henderson County. We disagree.

As set forth above, Cruse's treating physicians did not impose any restrictions on her ability to work. Furthermore, while Dr. Barefoot stated that Cruse would have difficulty performing various activities, he did not impose any specific restrictions on Cruse. The only physician who imposed any specific restrictions on Cruse was Dr. Primm, and those restrictions would not impede Cruse's ability to return to work for Henderson County. Just as the evidence did not compel the ALJ to find that Cruse is permanently and totally disabled, it did not compel the ALJ to find that Cruse is foreclosed from

returning to her work for Henderson County. Therefore, we affirm the ALJ's finding that Cruse is not entitled to enhanced benefits under KRS 342.730(1)(c)1.

## C.    KRS 342.730(4).

KRS 342.730(4) states in pertinent part that:

All income benefits payable pursuant to this chapter shall terminate as of the date upon which the employee qualifies for normal old-age Social Security retirement benefits under the United States Social Security Act, 42 U.S.C. secs. 301 to 1397f, or two (2) years after the employee's injury or last exposure, whichever last occurs.

At the time of her injury, Cruse was 71 years of age and qualified for "normal old-age Social Security retirement benefits." Under KRS 342.730(4), the ALJ found that Cruse was only entitled to 104 weeks of combined temporary total and permanent partial income benefits. Cruse argues that federal age discrimination statutes preempt state law and that KRS 342.730(4) violates her rights under the Equal Protection Clauses of the United States and Kentucky Constitutions. Henderson County argues to the contrary.

Earlier this year, in *Parker v. Webster Cnty. Coal, LLC, (Dotiki Mine)*, 2014-SC-000526-WC, 2017 WL 1536470 (Ky. Apr. 27, 2017) we held that KRS 342.730(4) unconstitutionally violated an older injured workers' right to equal protection. Because the constitutional issue was raised by Cruse and this matter was pending when we rendered *Parker*, it applies to Cruse's claim. *See Burns v. Level*, 957 S.W.2d 218, 222 (Ky. 1997). Therefore, we reverse that portion of the Court of Appeals opinion that affirms the ALJ's order limiting Cruse's benefits based on KRS 342.730(4), and we remand with instructions to

11

the ALJ to enter an opinion extending Cruse's benefits for the appropriate time-period without regard to KRS 342.730(4).

## IV. CONCLUSION.

For the foregoing reasons, we affirm in part, reverse in part, and remand.

All sitting. Cunningham, Keller, Venters and Wright, JJ., concur. Minton, C.J., concurs in part and dissents in part by separate opinion in which Hughes and VanMeter, JJ., join.

MINTON, C.J., CONCURRING IN PART AND DISSENTING IN PART: I concur in part and dissent in part with the majority opinion. Consistent with my dissent in *Parker v. Webster County Coal*, I must dissent from the majority's portion that reverses the Court of Appeals opinion that affirmed the ALJ's order limiting Cruse's benefits based on KRS 342.730(4).

Hughes and VanMeter, JJ., join.


COUNSEL FOR APPELLANT:

Austin P. Vowels
Vowels Law PLC


COUNSEL FOR APPELLEE:

David Leo Murphy
Murphy Law Offices, PLLC


COUNSEL FOR AMICUS CURIAE, AARP:

Timothy Jay Wilson
Wilson & McQueen

12

COUNSEL FOR AMICUS CURIAE, KENTUCKY CHAPTER OF AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS (AFL-CIO):

Mary Michele Cecil
Caslin & Cecil