# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 14, 2019
NOT TO BE PUBLISHED

# Supreme Court of Kentucky



2018-SC-000203-WC

JOSEPH THORNSBERRY        APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.        CASE NO. 2017-CA-000917
WORKERS' COMPENSATION BOARD NO. 16-WC-00001

FORD MOTOR COMPANY;        APPELLEES
HONORABLE STEPHANIE KINNEY,
ADMINISTRATIVE LAW JUDGE; AND
KENTUCKY WORKERS' COMPENSATION BOARD

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Joseph Warren Thornsberry appeals from a Court of Appeals decision that reversed, in part, the Worker's Compensation Board ("Board") opinion vacating, in part, and remanding an opinion, award, and order of the Administrative Law Judge ("ALJ") awarding Thornsberry permanent-partial disability benefits and denying him permanent-total disability benefits. Thornsberry argues that the Court of Appeals erred in reversing the Board's decision to remand his case to the ALJ to reconsider his entitlement to permanent-total disability benefits. For the reasons discussed below, we affirm the Court of Appeals.

# I. BACKGROUND.

Thornsberry worked on the assembly line at Ford Motor Company ("Ford"). During his employment at Ford, Thornsberry developed low-back pain and, on June 4, 2015, experienced a sharp, stabbing pain in his back while lifting a heavy tote on the assembly line. Thornsberry sought treatment at Ford Medical Department and was referred to Dr. Thomas Becherer.

Dr. Becherer requested and reviewed a lumbar MRI and eventually performed a lumbar laminectomy. He released Thornsberry to return to work, and Thornsberry did return on modified duty in January of 2016, continuing to report pain in his neck, back, and legs after prolonged standing.

In a letter dated March 25, 2016, Dr. Becherer opined that Thornsberry was at maximum medical improvement and assessed a 12% functional whole-person impairment rating under the American Medical Association, Guides to the Evaluation of Permanent Impairment, 5th Edition ("AMA Guides"). Dr. Becherer used the diagnosis-related estimate ("DRE") method to determine this rating. He also attributed 50% of the whole-person impairment rating to a preexisting active condition and accordingly determined Thornsberry's work-related impairment to be 6%.

Dr. James Farrage conducted an independent medical evaluation on February 24, 2016. Dr. Farrage believed Thornsberry had reached maximum medical improvement and assessed an 18% whole-body impairment rating. He used the range of motion ("ROM") method to determine this rating. Dr. Farrage found no prior-active impairment, attributing all of Thornsberry's impairment

2

rating to the work-related incident. He also believed that Thornsberry lacked the physical capacity to return to his pre-injury work and recommended work that avoids prolonged sitting and standing.

The ALJ determined that the AMA Guides required the ROM method to be used to calculate Thornsberry's impairment rating. Because Dr. Farrage was "the only physician to assess impairment pursuant to the ROM method," the ALJ adopted his assessment of an 18% impairment rating. But in determining whether Thornsberry had a prior-active condition, the ALJ noted that Dr. Becherer was Thornsberry's "treating neurosurgeon, which therefore places him in a better position to address Plaintiff's preexisting active impairment," and that Dr. Becherer was an "unbiased physician in this claim." The ALJ adopted Dr. Becherer's opinion that Thornsberry had a 6% prior-active impairment despite rejecting Dr. Becherer's total impairment rating because it was not based on the ROM method. Accordingly, the ALJ subtracted the 6% prior-active impairment from the total whole-person impairment rating of 18%, leaving Thornsberry's rating at 12%. The ALJ awarded permanent-partial disability benefits based on this rating.

In addressing Thornsberry's claim for entitlement to permanent-total disability benefits, the ALJ explained:

> The ALJ is required to undertake a 5-step analysis in order [sic] determine whether a claimant is permanently and totally disabled. The ALJ must determine whether there has been a work-related injury, what Plaintiff's impairment rating is, and address permanent disability. Finally, the ALJ must determine whether Plaintiff can perform any type of work and that total disability is due to the work injury. *Ashland v. Stumbo*, 461 S.W.3d 392 (Ky. 2015).

As set forth above, this ALJ has concluded Plaintiff is left with a 12% impairment rating because of the work injury and restrictions/limitations which prevent him from returning to his pre-injury job duties. The ALJ notes Plaintiff is 62 years old with a 12th grade education. Plaintiff is a very articulate and pleasant man. His past employment history is commendable and consists of work as a line feeder, manager, and production worker. He was a long-time employee for the Defendant, and during his tenure with the Defendant he worked in various capacities. Plaintiff has been issued permanent restrictions, but considering his education and past employment history, this ALJ does not believe Plaintiff is permanently and totally disabled. This ALJ believes Plaintiff does retain the physical capacity to perform some sort of light duty work. As such, this ALJ does not find Plaintiff to be permanently and totally disabled.

Thornsberry appealed to the Board, which determined because Dr. Beecher had used the DRE method for a condition that mandates the ROM method, the entirety of his impairment rating was unreliable, "including the 6% he assessed for pre-existing impairment." The Board vacated the award of permanent-partial disability benefits and remanded the claim "to the ALJ to reassess the percentage of Thornsberry's impairment to be apportioned to a pre-existing active condition."

In addressing the ALJ's denial of benefits for permanent-total disability, the Board explained because it had "vacated the award of permanent partial disability benefits for reassessment of Thornsberry's impairment rating, [it] requests the ALJ to revisit the issue of permanent total disability." The Board reasoned "the analysis of permanent total disability should be conducted with an accurate impairment rating."

The Court of Appeals reversed the Board's decision, in part, holding that "the Board erred by directing the ALJ to reconsider the issue of Thornsberry's

4

entitlement to [permanent total disability]." The appellate court agreed that the ALJ erred in attributing 6% of Thornsberry's impairment rating to a preexisting active condition. But the court explained that it is "irrelevant whether half or none of Thornsberry's total 18% [impairment rating] is attributable to a nonwork-related condition because KRS 342.730(1)(a) specifies that nonwork-related impairment 'shall not be considered' when determining whether an individual is totally disabled." Rather, the court explained, the permanent-total disability determination requires "(1) *[a]n* impairment rating due to the work-related injury; and (2) the presence of some or all of the disability factors discussed in *Hamilton,* 34 S.W.3d 48." Because the ALJ determined both that Thornsberry was entitled to an impairment rating because of his work-related injury and that "Thornsberry retained the capacity to perform work" in light of the analysis mandated by *Hamilton,* the appellate court determined there was no basis for requiring the ALJ to reconsider its decision to deny permanent-total disability benefits.

Thornsberry's appeal to this Court followed. He argues only that the Court of Appeals erred in reversing the Board's determination that the ALJ must reconsider whether Thornsberry is entitled to total disability benefits. We affirm the Court of Appeals but differ slightly in our reasoning.

## II. ANALYSIS.

### A. Standard of Review.

As finder of fact, the ALJ has "the sole discretion to determine the quality, character, and substance of [the] evidence and to draw reasonable

5

inferences from the evidence."[1] So, "[o]n appellate review, the ALJ's findings of fact are entitled to considerable deference and will not be set aside unless the evidence compels a contrary finding."[2] However, "we review the ALJ's application of the law *de novo.*"[3]

### B. The ALJ did not err in determining that Thornsberry did not have a permanent-total disability.

The sole issue in this case is whether the ALJ must reconsider Thornsberry's entitlement to permanent-total disability benefits because it incorrectly attributed 6% of Thornsberry's 18% whole-person impairment rating to a preexisting active condition. We agree with the Court of Appeals and hold the ALJ is not required to reconsider Thornsberry's eligibility for permanent-total disability benefits.

Under KRS 342.0011(11)(c), an employee has a permanent total disability if the employee, "due to an injury, *has a permanent disability rating* and has a complete and permanent inability to perform any type of work as a result of an injury . . . ."[4] A *permanent disability rating* is "the permanent

---

[1] *Magic Coal Co. v. Fox,* 19 S.W.3d 88, 96 (Ky. 2002).

[2] *U.S. Bank Home Mortgage v. Schrecker,* 455 S.W.3d 382, 384 (Ky. 2014) (citing *Bullock v. Peabody Coal Co.,* 882 S.W.2d 676 (Ky. 1994)).

[3] *Schrecker,* 455 S.W.3d at 384 (citing *Finley v. DBM Techs.,* 217 S.W.3d 261, 264 (Ky. App. 2007)).

[4] (emphasis added).

impairment rating selected by an administrative law judge times the factor set forth in the table that appears at KRS 342.730(1)(b)."[5]

In *City of Ashland v. Stumbo*,[6] this Court outlined a five-step analysis for determining whether a person has a permanent-total disability under KRS 342.0011(11)(c). We later summarized that analysis as follows:

> First, the ALJ must determine if the claimant suffered a work-related injury. Second, the ALJ must determine if the claimant does or does not have an impairment rating. Third, based on the impairment rating, the ALJ then must determine the claimant's permanent disability rating. Fourth, the ALJ must determine whether the claimant is unable to perform any type of work. Finally, it must be determined that the claimant's total disability is a result of the work-related injury.[7] In determining whether a claimant is able to perform any type of work [under step four], the ALJ must consider "factors such as the worker's post-injury physical, emotional, intellectual, and vocational status and how those factors interact."[8]

While it is not entirely clear from this analysis, the exact permanent disability rating is irrelevant to the determination of whether a claimant has a permanent-total disability.[9] Instead, KRS 342.0011(11)(c) simply requires the

---

[5] KRS 342.0011(36). *Permanent impairment rating* is defined as the "percentage of whole body impairment caused by the injury or occupational disease as determined by the 'Guides to the Evaluation of Permanent Impairment.'" KRS 342.0011(35).

[6] 461 S.W.3d 392, 396–97 (Ky. 2015).

[7] *United Parcel Serv., Inc. v. Woods*, No. 2015-SC-000647-WC, 2016 WL 4487508, at *4 (Ky. Aug. 25, 2016) (citing *City of Ashland v. Stumbo*, 461 S.W.3d 392, 396 (Ky. 2015)).

[8] *United Parcel Serv., Inc.*, 2016 WL 4487508, at *4 (citing *Ira A. Watson Dep't Store v. Hamilton*, 34 S.W.3d 48, 51–52 (Ky. 2000)).

[9] Although the *exact number* of the permanent disability rating is irrelevant to this analysis, the existence of such a rating is relevant and one of the required factors in the analysis. Thus, because the ALJ took the rating into consideration, the change in the specific number will not have a bearing on the overall analysis as to permanent total disability.

claimant to have *a* permanent disability rating—and, necessarily, a permanent impairment rating—for the ALJ to find them totally and permanently disabled because they have a "complete and total inability to perform any type of work as a result of an injury."[10] Whether the claimant has such an inability is then determined by weighing the factors set forth in *Hamilton*. Such factors include "the worker's post-injury physical, emotional, intellectual, and vocational status and how those factors interact, [and] the likelihood that the particular worker would be able to find work consistently over normal employment conditions," which "is affected by factors such as whether the individual will be able to work dependably and whether the worker's physical restrictions will interfere with vocational capabilities."[11] [12]

In this case, the ALJ did not abuse her discretion when she determined that Thornsberry had a permanent impairment rating of 18%, but erroneously reduced the rating by 6%. Left with a 12% impairment rating,[13] the ALJ then determined, by weighing the factors outlined in *Hamilton*, that Thornsberry

---

[10] KRS 342.0011(11)(c).

[11] *Hamilton*, 34 S.W.3d at 51.

[12] Further, even if a person is determined to have a permanent total disability, the exact impairment and disability rating has no bearing on the amount of benefits he may receive. Unlike benefits for a permanent partial disability, which are calculated by multiplying a portion of the claimant's average weekly wage by "the permanent impairment rating caused by the injury," KRS 342.730(1)(b), the calculation of benefits for a permanent total disability is simply a function of the claimant's average weekly wage. *See* KRS 342.730(1)(a).

[13] While the ALJ did not specifically calculate a permanent disability rating, Thornsberry necessarily has such a rating by the fact that the ALJ determined he had a permanent impairment rating. As explained above, the permanent disability rating is simply a function of the permanent impairment rating "times the factor set forth in the table that appears at KRS 342.730(1)(b)." KRS 342.0011(36).

retained "the physical capacity to perform some sort of light duty work." The ALJ therefore concluded that Thornsberry was not permanently and totally disabled. Put more simply, the ALJ determined that Thornsberry had a permanent disability rating but found that he did not have "a complete and permanent inability to perform any type of work as a result of an injury," and was therefore not entitled to permanent-total disability benefits.

Importantly, Thornsberry alleges only that the determination of whether he has a permanent-total disability must be revisited because the ALJ is now required on remand to reconsider what portion of Thornsberry's whole-body impairment rating is attributable to a preexisting active condition. But even if Thornsberry's permanent impairment rating changes because the ALJ finds that a different portion of his impairment is attributable to a preexisting active condition, the determination that he is entitled to permanent-partial disability will not be affected. This is because the ALJ has already rejected the claim for permanent-total disability, having determined, using the factors set forth in *Hamilton*, that Thornsberry does not have a "complete and total inability to perform any type of work as a result of an injury," as required under KRS 342.0011(11)(c).[14] So even if the ALJ finds that the entirety of Thornsberry's

---

[14] Thornsberry argues that *Ashland*, 461 S.W.3d 392, requires this Court to remand the permanent-total disability determination to the ALJ for reconsideration with a proper impairment rating. In that case, however, this Court determined that the ALJ's permanent disability analysis was not sufficient because he had "never found which impairment rating [the claimant] actually ha[d]." *Id.* at 396. Further, the ALJ had failed to set forth with specificity what factors the ALJ had considered in determining that the claimant was unable to perform any type of work. *Id.* Importantly, the ALJ in this case both found an impairment rating and sufficiently analyzed whether Thornsberry was able to perform some type of work.

impairment rating is attributable to a work-related injury, the ALJ will have still determined that he does not have a complete and total inability to perform any type of work—thus precluding him from having a permanent total disability. Accordingly, the there was no basis for the Board to direct the ALJ to reconsider the issue of permanent total disability.

## III. CONCLUSION.

In sum, we agree that the Board erred in remanding the case to the ALJ to reconsider Thornsberry's entitlement to permanent-total disability benefits.[15] Because the ALJ did not abuse her discretion by concluding that Thornsberry did not have a complete and total inability to perform any type of work as a result of an injury, a requirement necessary to find permanent-total disability,

---

[15] We must note, however, that our analysis differs slightly from that of the Court of Appeals. While that court reached the same conclusion, it reasoned that "for the purposes of determining [permanent-total disability], it is irrelevant whether half or none of Thornsberry's total 18% [whole-body impairment] is attributable to a nonwork-related condition because KRS 342.730(1)(a) specifies that nonwork-related impairment 'shall not be considered' when determining whether an individual is totally disabled."

While it is true that nonwork-related impairment shall not be considered in determining whether a person has a permanent-total disability, it is not because that nonwork-related impairment does not have any bearing on whether a person has a permanent-total disability. Instead, the portion of nonwork-related impairment may not be considered in determining permanent-total disability in the sense that only work-related impairments count toward a person's permanent impairment rating, which is a baseline requirement for permanent-total disability.

So nonwork-related impairment is still relevant to the ALJ's permanent-total disability analysis because it could theoretically be the case that the entirety of a claimant's impairment rating is the result of a nonwork-related impairment. In that scenario, the claimant's permanent impairment rating would be reduced to 0%, rendering him ineligible to recieve a permanent-total disability award.

Therefore, we affirm in this case not because the ALJ cannot consider what portion of Thornsberry's impairment is attributable to a nonwork-related injury, but because the result will be the same regardless of whether all or none of his impairment is attributable to a nonwork-related injury because he does not have a "complete and total inability to perform any type of work as a result of an injury."

Thornsberry's prior-active impairment rating, if any, will not have any bearing on his entitlement to benefits for permanent total disability.

For the above state reasons, we affirm the Court of Appeals.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, JJ., sitting. All concur.

COUNSEL FOR APPELLANT:

Charles E. Jennings

COUNSEL FOR APPELLEE FORD MOTOR COMPANY:

Johanna Frantz Ellison
Fowler Bell, PLLC

COUNSEL FOR WORKERS' COMPENSATION BOARD:

Robert Lloyd Swisher

Honorable Stephanie Letitia Kinney, Administrative Law Judge